UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; AND SIDERCA S.A.I.C.,<br><br>                    Plaintiffs,<br><br>  v.<br><br>UNITED STATES,<br><br>                    Defendant. | Court No. 22-00343<br>Before: Unassigned |

## COMPLAINT

Plaintiffs, Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris Global Services (U.S.A.) Corporation, and Siderca S.A.I.C., by and through counsel, bring this Complaint against the United States, and allege as follows:

## DETERMINATION TO BE REVIEWED

1. Plaintiffs contest certain aspects of, and the legal basis for, the final determination issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its antidumping duty ("AD") investigation of oil country tubular goods ("OCTG") from Argentina, Inv. No. A-357-824. The final determination was published in the *Federal Register* as *Oil Country Tubular Goods From Argentina: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 87 Fed. Reg. 59,054 (Sept. 29, 2022) ("Final Determination"). The corresponding AD order was published in the *Federal Register* on November 21, 2022. *See Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for the Russian Federation*, 87 Fed. Reg. 70,785 (Nov. 21, 2022) ("AD Order").

## JURISDICTIONAL STATEMENT

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which confers on the U.S. Court of International Trade jurisdiction to review final AD determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(i) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2)(A)(i) and (B)(i)).

## NAME AND STANDING OF PLAINTIFFS

3. Plaintiffs in this action are Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc. (collectively, "Tenaris USA"), producers in the United States of the domestic like product; Tenaris Global Services (U.S.A.) Corporation ("TGS USA"), a United States importer of subject merchandise; and Siderca S.A.I.C. ("Siderca"), a foreign producer and exporter of subject merchandise. Plaintiffs are interested parties, as defined in 19 U.S.C. § 1677(9)(A) and (C), who actively participated in the investigation that resulted in the contested determination. Plaintiffs therefore are entitled to commence this civil action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4. The AD Order for OCTG from Argentina was published in the *Federal Register* on November 21, 2022. *See* 87 Fed. Reg. 70,785. Plaintiffs commenced this action by filing a summons with this Court on December 16, 2022, which is within 30 days of the publication of the AD Order. *See* 19 U.S.C. § 1516a(a)(2)(A). In accordance with 19 U.S.C. § 1516a(a)(2)(A), Plaintiffs timely filed this Complaint on January 13, 2023, within 30 days after filing of the Summons.

## STANDARD OF REVIEW

5. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. §

1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

6.  On October 6, 2021, Petitioners Borusan Mannesmann Pipe U.S., Inc., PTC Liberty Tubulars LLC, U.S. Steel Tubular Products, Inc., the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), and Welded Tube USA, Inc. (collectively, "Petitioners") filed petitions for the imposition of antidumping and countervailing duties ("CVD") on OCTG from Argentina (AD), Mexico (AD), Korea (CVD), and Russia (AD/CVD).

7.  On October 7, 2021, Commerce issued a questionnaire to Petitioners pertaining to general issues (Petitions Vol. I), requesting additional information or revisions regarding, *inter alia*, each Petitioner's 2020 production and shipment quantities. *See* Letter from Rebecca Janz to Roger B. Schagrin and Thomas M. Beline, re: *Petitions for the Imposition of Antidumping and Countervailing Duties on Imports of Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the Russian Federation: Supplemental Questions*, Inv. No. A-357-824 (Oct. 7, 2021). Commerce also identified a "methodological error with respect to the calculation of total shipments for the U.S. industry," and requested that Petitioners provide production figures for USW-represented mills.

8.  On October 8, 2021, Tenaris USA submitted comments to Commerce identifying factual errors and other flaws in the petitions that rendered Petitioners' industry support calculation inaccurate and unreliable. *See* Letter from White & Case LLP to Sec'y Commerce, re: *Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Factual Errors in Petitions*, Inv. No. A-357-824 (Oct. 8, 2021). Tenaris USA submitted the same comments in each

of the OCTG investigations (Inv. Nos. A-357-824, C-580-913, A-201-856, A-821-833, and C-821-834).  Per 19 U.S.C. §§ 1673a(c)(4)(A) and 1671a(c)(4)(A), AD and CVD petitions must have the support of companies/workers constituting more than 50 percent of the industry expressing either support or opposition, as measured by production of the domestic like product.  Tenaris USA's comments demonstrated that Petitioners' calculations were flawed for several reasons.  First, Petitioners incorrectly stated that two of Tenaris USA's production plants were represented by USW and therefore the production figures from these two mills were incorrectly deducted from the denominator for the standing calculation.  Second, the standing calculation was based on 2020 production data that was anomalous and therefore unreliable for purposes of establishing the requisite level of industry support for the petitions.  Finally, Petitioners relied on shipment data to support their industry support calculations rather than on production data as specified by the statute in 19 U.S.C. §§ 1673a(c)(4)(A)(ii) and 167la(c)(4)(A)(ii).  Plaintiffs requested that Commerce reject the petitions as inadequate or, alternatively, delay determination of adequacy by 20 days in order to poll the industry to determine support, per 19 U.S.C. §§ 1673a(c)(l)(B) and 167la(c)(l)(B).

9. On October 12, 2021, Petitioners submitted their general issues questionnaire response, which included a modified calculation of industry support that relied on a combination of domestic shipment data from an industry publication, data from the U.S. International Trade Commission's 2020 final sunset review determination, further adjustments based on ratios of domestic and export shipments, and estimates of non-petitioning companies' production (as opposed to shipments).  Letter from Cassidy Levy Kent (USA) LLP and Schagrin Associates to Sec'y Commerce and Sec'y Int'l Trade Comm'n, re: *Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Response to General Issues Questionnaire*, Inv. No. A-357-824 (Oct. 12, 2021).

10. On October 15, 2021, Tenaris USA submitted additional comments explaining that Petitioners' modified industry support calculation was also flawed because it: (1) erroneously deducted production data from a third non-union Tenaris USA mill from the standing calculation; (2) relied on anomalous 2020 production data, leading to results not accurately reflecting the domestic industry; and (3) presented a modified calculation methodology relying on total industry production and domestic shipment volume for 2018 and 2019 – a time frame that was even more distant, and therefore also unreliable. *See* Letter from White & Case LLP to Sec'y Commerce, re: *Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Standing*, Inv. No. A-357-824 (Oct. 15, 2021). Due to these fundamental issues that called into question the bases for the proper standing to file the petitions, Plaintiffs argued that Commerce should poll the industry and take the additional 20 days permitted under 19 U.S.C. § 1673a(c)(l)(B) and 19 U.S.C. § 167la(c)(l)(B) to evaluate the level of industry support for the petitions; and further noted that Tenaris USA is the largest U.S. OCTG producer, and its position on the petitions should be counted in determining industry support because its interests as a domestic producer would be adversely affected by the imposition of AD orders.

11. On October 18, 2021, in response to Tenaris USA's comments regarding deficiencies that showed lack of the statutory requisite level of domestic industry support for the petitions, Petitioners submitted a further revised industry support calculation. Letter from Cassidy Levy Kent (USA) LLP and Schagrin Associates to Sec'y Commerce, re: *Oil Country Tubular Goods from Argentina, Mexico, Russia, and the Republic of Korea: Response to Tenaris Submission Concerning Petitioners' Standing*, Inv. No. A-357-824 (Oct. 18, 2021), at Attachment 6.

12. On October 19, 2021, Commerce issued a Second General Issues Questionnaire to Petitioners, requesting yet further revisions. Commerce requested additional information

regarding (1) USW mill representation and (2) errors in the declarations of industry support submitted in Petitioners' October 18, 2021 comments.  Letter from Rebecca Janz to Roger B. Schagrin and Thomas M. Beline, re: *Petitions for the Imposition of Antidumping and Countervailing Duties on Imports of Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the Russian Federation: Supplemental Questions*, Inv. No. A-357-824 (Oct. 19, 2021).

13.  On October 20, 2021, Tenaris USA submitted reply comments to Petitioners' October 18 submission, arguing that: (1) Petitioners, not Tenaris USA, bears the burden of demonstrating industry support for the petitions; (2) Petitioners' two subsequent revised support calculations continued to be based on flawed data and assumptions, and were therefore unreliable; and (3) Petitioners improperly included finishing operations in its industry support calculation, as well as subsidized OCTG imported from Turkey for finishing.  *See* Letter from White & Case LLP to Sec'y Commerce, *Reply Comments on Petitioners' Standing*, Inv. No. A-357-824 (Oct. 20, 2021).

14.  On October 21, 2021, Petitioners filed a response to Commerce's October 19 Second General Issues Questionnaire.  Petitioners' response included a further revised industry support calculation.  Letter from Cassidy Levy Kent (USA) LLP and Schagrin Associates to Sec'y Commerce and Sec'y Int'l Trade Comm'n, re: *Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Response to Second General Issues Questionnaire*, Inv. No. A-357-824 (Oct. 21, 2021).

15.  On October 22, 2021, Tenaris USA filed comments on Petitioners' October 21 response, arguing that Petitioners' revised industry support calculation, like the three previous attempts to provide the requisite support for the petitions, was also based on flawed data and assumptions.  *See* Letter from White & Case LLP to Sec'y Commerce, re: *Oil Country Tubular Goods from*

*Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Second General Issues Questionnaire Response*, Inv. No. A-357-824 (Oct. 22, 2021). These deficiencies included: (1) the use of 2020 production data, given the unique market factors that impacted demand for OCTG in 2020; (2) implications of the impact of high hot-rolled coil prices on the U.S. OCTG market; (3) an attempt to reach the 50 percent industry support threshold by cobbling together smaller producers and processors/finishers of OCTG products; and (4) the implications of including unfairly traded OCTG imports into the United States for finishing in calculating industry support for the petition.

16. Commerce initiated the investigation on October 26, 2021. *Oil Country Tubular Goods From Argentina, Mexico, and the Russian Federation: Initiation of Less-Than-Fair-Value Investigations*, 86 Fed. Reg. 60,205 (Nov. 1, 2021).

17. Commerce determined that the share of U.S. production represented by the supporters of the petitions was above 25 percent of total U.S. production, so that the threshold under 19 U.S.C. §§ 1671a(c)(4)(A)(i) and 1673a(c)(4)(A)(i) was met. *See* Commerce Initiation Checklist (Oct. 26, 2021), at Attachment II.

18. Commerce found that the petitions did not establish the support of domestic producers accounting for more than 50 percent of the total production of the domestic like product, as required under 19 U.S.C. §§ 1671a(c)(4)(A)(ii) and 1673a(c)(4)(A)(ii). However, Commerce did not poll the industry. Instead, Commerce determined to "rely on other information" submitted by Petitioners and, on the basis of that information, determined there was adequate industry support. *See* Commerce Initiation Checklist, Inv. No. A-357-824 (Oct. 26, 2021), at Attachment II.

19. Commerce published its Final Determination on September 29, 2022, finding that OCTG from Argentina is being, or is likely to be, sold in the United States at less than fair value during the period of investigation. *See* 87 Fed. Reg. 59,054.

20. The antidumping duty order on oil country tubular goods from Argentina was published in the *Federal Register* as *Oil Country Tubular Goods From Argentina, Mexico, and the Russian Federation: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for the Russian Federation*, 87 Fed. Reg. 70,785 (Nov. 21, 2022).

## STATEMENT OF CLAIMS

### COUNT ONE

21. Plaintiffs hereby incorporate by reference paragraphs 6 through 20 of this Complaint.

22. Section 732 of the Tariff Act establishes procedures and threshold requirements for the initiation of an AD or CVD investigation by petition. Among these requirements, Commerce must determine if a petition has been filed by or on behalf of the domestic industry. 19 U.S.C. §§ 1673a(c)(4)(A) and 1671a(c)(4)(A). If the petition has not been filed on behalf of the domestic industry, Commerce must dismiss the petition and terminate the proceeding. 19 U.S.C. §§ 1673a(c)(3) and 1671a(c)(3). Accordingly, in the absence of meeting the requisite levels of industry support for the petition as specified in the statute, Commerce lacks statutory authority to initiate an investigation, issue a final determination, or impose an AD or CVD order pursuant to such a petition.

23. In determining whether a petition has been filed by or on behalf of the U.S. industry, Commerce is guided by the Tariff Act's definition of "industry," which "means the producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product." 19 U.S.C.

§ 1677(4)(A). Pursuant to 19 U.S.C. §§ 1673a(c)(4)(A)(ii) and 1671a(c)(4)(A)(ii), the statutory threshold for determining industry support is "more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition."

24. Each of Petitioners' successive standing calculations were based on flawed assumptions and a combination of anomalous production data and shipment data that failed to provide a reliable basis for Commerce to determine whether the petitions were filed "by or on behalf of the domestic industry."  Therefore, consistent with its statutory mandate, Commerce should have polled the domestic industry to determine whether there was sufficient industry support for the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order.  In the absence of the requisite level of industry support for a petition as specified in the statute, Commerce lacks the statutory authority to initiate an investigation and to issue a final determination that can serve as the basis for an AD order for an investigation initiated pursuant to such a petition.

25. Accordingly, Commerce's initiation of the investigation on imports of OCTG from Argentina was inconsistent with the statutory requirements for determining the requisite industry support to permit the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order.

**COUNT TWO**

26. Plaintiffs hereby incorporate by reference paragraphs 6 through 25 of this Complaint.

27. Commerce's regulations specify that "{t}he Secretary normally will measure production over a twelve-month period specified by the Secretary, and may measure production based on either value or volume" and contemplate that "production levels may be established by reference

to alternative data" and such data must be "indicative of production levels." *See* 19 C.F.R. § 351.203(e)(1).

28. Commerce's reliance on industry support calculations that were based on a combination of anomalous production data and shipment data could not serve as a reasonable proxy for production data as specified by the statute and regulations, such that Commerce could determine whether "the producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product." *See* 19 U.S.C. § 1673a(c)(4)(A) and 19 C.F.R. § 351.203(e)(1). The information that Commerce relied on could not serve as a reasonable proxy for production levels for Commerce to determine that the petition was filed "by or on behalf of the domestic industry." Accordingly, Commerce's initiation of the investigation on imports of OCTG from Argentina was inconsistent with the statutory requirements for determining the requisite industry support to permit the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order.

## COUNT THREE

29. Plaintiffs hereby incorporate by reference paragraphs 6 through 28 of this Complaint.

30. Pursuant to 19 U.S.C. § 1673a(c)(4)(D), if the industry support established by the petition accounts for less than 50 percent of the total production of the domestic like product, Commerce must "poll the industry or rely on other information" to determine whether there is sufficient support for the petition." Commerce should have polled the domestic industry to determine whether there was sufficient industry support for the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order, given that the industry support calculations were revised multiple times by Petitioners. These successive industry support

calculations were based on a combination of anomalous production data and shipment data that could not serve as a reasonable proxy for the production data levels as specified in the statute. Neither Petitioners' multiple flawed industry support calculations, nor the other information relied on by Commerce were appropriate for purposes of determining industry support. Therefore, consistent with its statutory mandate, Commerce should have polled the domestic industry to determine whether there was sufficient industry support for the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order. Accordingly, Commerce's initiation of the investigation on imports of OCTG from Argentina without polling the industry was inconsistent with the statutory requirements for determining the requisite industry support to permit the initiation of the investigation, the issuance of the Final Determination, and the imposition of an AD order.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

(a) Hold that Commerce's determination to initiate the investigation is unsupported by substantial evidence and otherwise not in accordance with law;

(b) Hold that the Final Determination is unsupported by substantial evidence and otherwise not in accordance with law;

(c) Remand the Final Determination to Commerce with instructions to issue a new determination that is consistent with the Court's decision; and

(d)  Provide such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        /s/ Gregory J. Spak
        Gregory J. Spak
        Frank J. Schweitzer
        Kristina Zissis
        Matthew W. Solomon
        Danica Harvey

        WHITE AND CASE LLP
        701 Thirteenth Street, NW
        Washington, DC 20005
        (202) 626-3600

        *Counsel for Tenaris Bay City, Inc., IPSCO Tubulars Inc., Maverick Tube Corporation, Tenaris Global Services (U.S.A.) Corporation, and Siderca S.A.I.C.*

Date: January 13, 2023