# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; and SIDERCA S.A.I.C., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | Court No. 22-00343 |
| Defendant, | ) ) | **PUBLIC VERSION** |
| and | ) ) | |
| UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; and WELDED TUBE, | ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

IAN ANDREW McINERNEY
Attorney
Office of the Chief Counsel
    for Trade Enforcement & Compliance
U.S. Department of Commerce

/s/Hardeep K. Josan
HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax:  (212) 264-1916
Email: hardeep.k.josan@usdoj.gov

September 22, 2023

# **TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 2

    **I.**  The Administrative Determination Under Review ........................................... 2

    **II.** Statement Of The Issues ........................................................................... 2

STATEMENT OF FACTS ....................................................................................... 2

    **I.**  Petition For The Investigation And General Issues Questionnaire Responses ................. 2

    **II.** Tenaris USA's Challenges To Industry Support ............................................. 5

    **III.** Initiation Of The Investigation ................................................................ 7

    **IV.** Preliminary And Final Determinations ....................................................... 8

SUMMARY OF THE ARGUMENT ........................................................................ 9

ARGUMENT ........................................................................................................ 9

    **I.**  Standard Of Review ................................................................................ 9

    **II.** Commerce Lawfully Estimated The Total Domestic OCTG Production By Relying On
         The Record And Publicly Available Data ................................................... 10

    **III.** Commerce's Determination To Not Poll The Industry Was Based On Substantial
         Evidence And In Accordance With Law ..................................................... 20

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Chevron, U.S.A., Inc. v. Natural res. Def. Council, Inc.*,
 467 U.S. 837 (1984) ......................................................................................... 10

*Consol. Edison Co. of N.Y. v. NLRB,*
 *305 U.S. 197, 229 (1938)* ................................................................................. 10

*Consolo v. Fed. Mar. Comm'n,*
 383 U.S. 607 (1966) .......................................................................................... 10

*Guizhou Tyre Co. v. United States,*
 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019) ..................................................... 19

*Jindal Poly Films Ltd. of India v. United States*,
 365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ..................................................... 19

*Pokarna Engineered Stone Limited v. United States*,
 547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021)
 *aff'd* 56 F.4th 1345 (Fed. Cir. 2023) ................................................................. 22

*Qingdao Taifa Group Co. v. United States,*
 710 F. Supp. 2d 1352 (Ct. Int'l Trade 2010) ............................................... 19, 20

*Risen Energy Co., Ltd. v. United States,*
 611 F. Supp. 3d 1384 (Ct. Int'l Trade 2022) ..................................................... 19

*Saha Thai Steel Pipe Pub. Co., LTD v. United States*,
 605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ..................................................... 19

*Sigma Corp. v. United States,*
 841 F. Supp. 1255 (Ct. Int'l Trade 1993) ..................................................... 19, 20

*Tianjin Tiancheng Pharm. Co. v. United States,*
 366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ..................................................... 10

*United States v. Eurodif S.A.*,
 555 U.S. 305 (2009) .......................................................................................... 10

*Zenith Radio Corp. v. United States*,
 437 U.S. 443 (1978) .......................................................................................... 10

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................... 10

19 U.S.C. § 1637a(c)(4)(A) ................................................................................ 7, 8

19 U.S.C. § 1673 ................................................................................................... 9

19 U.S.C. § 1673a ........................................................................................... 16, 22

19 U.S.C. § 1673a(c)(1)(A) .................................................................................... 7

19 U.S.C. § 1673a(c)(1)(B) .............................................................................. 21, 22

19 U.S.C. § 1673a(c)(4)(A) ................................................................................ 9, 11

19 U.S.C. § 1673a(c)(4)(A) (i) ............................................................................. 11

19 U.S.C. § 1673a(c)(4)(A) (ii) ............................................................................ 11

19 U.S.C. § 1673a(c)(4)(D) .................................................................................. 21

19 U.S.C. § 1673a(c)(4)(D)(i) .......................................................................... 21, 22

19 U.S.C. § 1673a(c)(4)(E) .................................................................................... 9

19 U.S.C. § 1677e ................................................................................................. 18

19 U.S.C. § 1677e(a)............................................................................................. 18

**Rules**

USCIT R. 56.2 ...................................................................................................... 1, 2

**Regulations**

19 C.F.R. § 351.203(e)(1)................................................................................ 11, 13

19 C.F.R. § 351.204(b)(1).................................................................................... 8

19 C.F.R. § 351.301(c)(1)(v) ............................................................................... 17

**Other Authorities**

*Initiation of Antidumping Duty Investigation: Circular*
*Seamless Steel Hollow Products from Japa*n,
64 Fed. Reg. 63,285, 63,287 (Nov. 19, 1999) ................................................................ 11

*Regulations To Improve Administration and Enforcement*
*of Antidumping and Countervailing Duty Laws,*
86 Fed. Reg. 52,300 (Dep't of Commerce Sep. 20, 2021) ................................. 15, 16, 17

*Oil Country Tubular Goods from Argentina, Mexico and the Russian*
*Federation: Initiation of Less-Than-Fair-Value Investigation,*
86 Fed. Reg. 60,205 (Nov. 1, 2021) ................................................................................ 7

*Oil Country Tubular Goods from Argentina: Final affirmitive determination of sales*
*at Less than Fair Value and Final Negative Determination of Critical circumstances,*
87 Fed. Reg. 50,054 (Sept. 29, 2022) .............................................................................. 8

*Oil Country Tubular Goods from Argentina: Final affirmitive determination of sales*
*at Less than Fair Value and Final Negative Determination of Critical circumstances,*
87 Fed. Reg. 59,054 (Dep't of Commerce Sept. 29, 2022) .............................................. 2

*Oil Country Tubular Goods from Argentina, Mexico and the Russian Federation:*
*Antidumping Duty orders and Amended Final Affirmitative Antidumping Duty*
*Determination for the Russian Federation,*
87 Fed. Reg. 70,785 (Dep't of Commerce Nov. 21, 2022) ......................................... 2, 9

 *Oil Country Tubular Goods from Argentina: Preliminary Affirmitative*
*Determinations of sales at Less Than Fair Value and Critical Circumstances,*
*Postponement of Final Determination, and Extension of Provisional Measures,*
87 Fed. Reg. 28,801 (May 11, 2022) ............................................................................... 8

*Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan,*
*Thailand, Turkey, Ukraine, and Vietnam, Inv. Nos. 701-TA-499-500*
*and 731-TA-1215-1217 and 1219-1223 (Final),*
USITC Pub. 4489 (September 2014) ............................................................................... 15

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; and SIDERCA S.A.I.C., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) Court No. 22-00343 ) |
| Defendant, | ) **PUBLIC VERSION** ) |
| and | ) ) |
| UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; and WELDED TUBE, | ) ) ) ) ) ) ) ) ) ) |
| Defendant-Intervenors. | ) ) |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States,

respectfully submits this response to the motion for judgment upon the agency record filed by

plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris

Global Services (U.S.A.) Corporation, and Siderca S.A.I.C. (collectively, Tenaris USA).

Because the Department of Commerce's final determination in its antidumping duty

investigation of oil country tubular goods (OCTG) from Argentina is supported by substantial

evidence and in accordance with law, we respectfully request that the Court reject plaintiffs' challenges and sustain Commerce's determination.

## STATEMENT PURSUANT TO RULE 56.2

### I.     The Administrative Determination Under Review

The administrative determination under review is *Oil Country Tubular Goods from Argentina: Final Affirmative determination of Sales at Less than Fair Value and Final Negative Determination of Critical Circumstances*, 87 Fed. Reg. 59,054 (Dep't of Commerce Sept. 29, 2022) (Final Determination).  Following an affirmative injury determination by the U.S. International Trade Commission (ITC), Commerce published an antidumping duty (AD) order on November 21, 2022.  *See Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for the Russian Federation*, 87 Fed. Reg. 70,785 (Dep't of Commerce Nov. 21, 2022).  The period of investigation covers October 1, 2020 through September 30, 2021.

### II.     Statement Of The Issues

1.     Whether Commerce's industry support calculations were supported by substantial evidence and otherwise in accordance with law.

2.     Whether Commerce's determination to initiate the AD investigation without polling the domestic OCTG industry was supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF FACTS

### I.     Petition For The Investigation And General Issues Questionnaire Responses

On October 6, 2021, Commerce received a properly filed AD petition concerning imports of OCTG from Argentina.  *See Petitions for the Imposition of Antidumping and Countervailing*

*Duties: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia*,
(Oct. 6, 2021) (Petition), C.R. 1-6.[1]  The Petition was filed on behalf of Borusan Mannesmann
Pipe U.S., Inc., PTC Liberty Tubulars LLC, U.S. Steel Tubular Products, Inc., the United Steel,
Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC (USW), and Welded Tube USA, Inc., (collectively, the
petitioners).  *Id.*  The petitioners are domestic producers and a certified union that represents
workers engaged in the production of OCTG.  *Id.*

On October 7, 2021, Commerce issued the First General Issues Questionnaire requesting
additional information on domestic industry data, which the petitioners responded to on October
12, 2021.  *See Re: Petitions for the Imposition of Antidumping and Countervailing Duties on
Imports of Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the
Russian Federation: Supplemental Questions*, (Oct. 7, 2021) (First General Issues
Questionnaire), C.R. 8; *Re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of
Korea, and Russia: Response to General Issues Questionnaire*, (Oct. 12, 2021) (First General
Issues Questionnaire Response), C.R. 10.  The petitioners established the universe of domestic
OCTG producers based on the producers identified in the most recent full sunset review by the
ITC and on their knowledge of the OCTG industry.  *See* First General Issues Questionnaire
Response at Ex. 1, C.R. 10.  The petitioners identified 20 producers, including the petitioning
companies, as the domestic OCTG industry.  *See id.* at 1-2.

 On October 19, 2021, Commerce issued the Second General Issues Questionnaire
requesting information on domestic OCTG production facilities with workers represented by the
petitioning labor union, the USW.  *See Re: Petitions for the Imposition of Antidumping and*

---

[1] "C.R." refers to documents in the confidential record.

*Countervailing Duties on Imports of Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the Russian Federation: Supplemental Questions*, (Oct. 19, 2021) (Second General Issues Questionnaire), C.R. 24.  In their response, the petitioners provided the names and locations of domestic OCTG facilities that have workers represented by the USW. *See Re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the Russian Federation: Response to Second General Issues Questionnaire*, (Oct. 21, 2021) (Second General Issues Questionnaire Response), C.R. 23.  These domestic facilities are in 10 different locations, including three Tenaris USA facilities in Ambridge, PA; Koppel, PA; and Wilder, KY. *See id* at 1.

Both of the petitioners' responses provided industry support data by reporting their own and non-petitioning producers' 2020 OCTG production data.  *See* First General Issues Questionnaire Response at 1-3, C.R. 10; *see also* Second General Issues Questionnaire Response at Ex. 5, C.R. 23.  The petitioners provided letters from several non-petitioning producers that stated their support for the Petition and reported their 2020 OCTG production data.  *See* Second General Issues Questionnaire Response at 1-2 and Ex. 3-4, C.R. 23.  Moreover, the petitioners provided letters from two additional non-petitioning producers that stated their neutral position with respect to the Petition, as well as reporting their 2020 OCTG production data.  *See* First General Issues Questionnaire Response at 8 and Ex. 5, C.R. 10; *see also* Second General Issues Questionnaire Response at Ex. 2, C.R. 23.

The petitioners also provided the entire domestic industry's total 2020 OCTG production data based on publicly available shipment data and the ITC's latest full sunset review of OCTG from India, Korea, Turkey, Ukraine, and the Socialist Republic of Vietnam.  *See* Petition at Vol. I at Ex. I-1 and I-2; First General Issues Questionnaire Response at 6-10 and Ex. 1 and Ex. 8,

C.R. 10; Second General Issues Questionnaire Response at Ex. 5, C.R. 23.  Specifically, the petitioners established the entire industry's total 2020 OCTG production by adding the production of the petitioning producers to the production of non-petitioning producers.  *See* First General Issues Questionnaire Response at Ex. 8, C.R. 8; Second General Issues Questionnaire Response at Ex. 5, C.R. 23.

## II.    Tenaris USA's Challenges To Industry Support

On October 8 and 15, 2021, Tenaris USA filed comments challenging the petitioners' industry support calculations.  *See Re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Factual Errors in Petitions*, (Oct. 8, 2021) (Tenaris USA Oct. 8, 2021 Comments), C.R. 9; *see also Re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Standing*, Inv. No. A-357-824 (Oct. 15, 2021) (Tenaris USA Oct. 15, 2021 Comments), C.R. 12-18.

Tenaris USA alleged that workers in three of Tenaris USA's mills (located in Conroe, Texas; Hickman, Arkansas; and Camanche, Iowa) do not have workers represented by the petitioning labor union USW, and thus, industry support calculations must be readjusted accordingly.  *See* Tenaris USA Oct. 8, 2021 Comments at 3-5, Ex. 1-2, C.R. 9; Tenaris USA Oct. 15, 2021 Comments at 8, C.R. 12-18.  Tenaris USA also alleged that 2020 production data are unreliable for industry support calculations because, while experiencing the global COVID-19 pandemic, the OCTG market was volatile and highly unusual.  *See* Tenaris USA Oct. 8, 2021 Comments at 6-7, C.R. 9; Tenaris USA Oct. 15, 2021 Comments at 9, C.R. 12-18.  Tenaris USA further contended that Commerce should extend the deadline for initiation and poll the industry to obtain reliable data to ensure the petitions have been filed by or on behalf of the industry.  *See id.* at 3 and 7.

The petitioners responded to Tenaris USA's comments on October 18, 2021. *See Re: Oil Country Tubular Goods from Mexico: Reply Comments on Petitioners' Standing*, (Oct. 18, 2021), C.R. 19. The petitioners clarified that the petitioners' revised industry support calculations are based on their own data and reliable data published by the ITC. *Id* at 3. In addition, the petitioners explained that they found sufficient industry support even with their revised methodology, which does not rely upon any production where employees are represented by the USW. *See id* at 3 and 8. Regarding Tenaris USA's assertion that Commerce should not rely on 2020 data for measuring industry support, the petitioners noted that Tenaris USA provided no suggested alternate period nor any legal authority requiring Commerce to use another period. *See id.* at 9.

On October 20, 2021, Tenaris USA submitted reply comments reiterating its arguments from its two previous submissions with respect to the industry support calculation. *See Re: Oil Country Tubular Goods from Mexico: Reply Comments on Petitioners' Standing*, (Oct. 20, 2021) (Tenaris's Oct. 20, 2021 Comments), C.R. 22. Tenaris USA contended that Commerce should poll the domestic industry and request actual production data, including for the most recent 12 months. *See id.* at 6-7.

On October 21, 2021, TMK Group (TMK), a Russian producer and exporter of OCTG, filed comments challenging the petitioners' industry support calculations. *See* Commerce Initiation Checklist (Oct. 26, 2021) (Initiation Checklist), C.R. 26. TMK echoed Tenaris USA's comments by arguing that calendar year 2020 data are inappropriate for industry support calculations, and that Commerce should poll the industry to ensure that the petitions are adequately supported over a recent and representative 12-month period. *See id.* at 7.

The next day, on October 22, 2021, Tenaris USA reported its opposition to the petition, 16 days after the date of the Petition and four days before Commerce's statutory deadline for determination on initiation of the investigation. *See* 19 U.S.C. § 1673a(c)(1)(A); *Re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Second General Issues Questionnaire Response*, (Oct. 22, 2021) (C.R. 25).

## III.    Initiation Of The Investigation

In accordance with the 20-day statutory deadline, Commerce initiated the AD investigation on October 26, 2021. *See Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation: Initiation of Less-Than-Fair-Value Investigation*, 86 Fed. Reg. 60,205 (Nov. 1, 2021) (Initiation Notice); s*ee also* 19 U.S.C. § 1673a(c)(1)(A). Commerce based the industry support calculation on the information available on the record, which consisted solely of information provided by the petitioners. *See generally* Initiation Checklist, C.R. 26. Commerce determined that the petitioners met the statutory requirement, which requires the domestic producers or workers who support the petition account for (1) at least 25 percent of the total production of the domestic like product; and (2) more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for, or opposition to, the petition. *See* 19 U.S.C. § 1637a(c)(4)(A).

Specifically, Commerce determined that even if all non-petitioning domestic OCTG producers oppose the petition, domestic producers and workers who support the Petition accounted for ▮▮▮▮ percent of the entire industry. *See* Initiation Checklist, Attachment II at 6-8, C.R. 26. Under the same methodology, Commerce found that the supporters of the Petition accounted for ▮▮▮▮ percent of the domestic producers and workers who expressed either

support for, or opposition to, the petition. *See id.* Thus, Commerce found that the Petition was filed by or on behalf of the domestic industry, pursuant to 19 U.S.C. § 1637a(c)(4)(A).

In addition, because the Petition was filed on October 6, 2021, pursuant to 19 C.F.R. § 351.204(b)(1), Commerce found that the period of investigation is October 1, 2020, through September 30, 2021, which are the four most recently completed fiscal quarters since the month preceding filing date. *See* 19 C.F.R. § 351.204(b)(1); *see also* Initiation Notice at 60,205.

## IV.    <u>Preliminary And Final Determinations</u>

On May 11, 2022, Commerce published its preliminary determination that OCTG from Argentina is being, or likely to be, sold in the United States at less than fair value. *See Oil Country Tubular Goods From Argentina: Preliminary Affirmative Determinations of Sales at Less Than Fair Value and Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 87 Fed. Reg. 28,801 (May 11, 2022) and accompanying preliminary issues and decision memorandum.

On September 29, 2022, Commerce published the final determination in which it determined that OCTG from Argentina is being, or likely to be, sold in the United States at less than fair value. *See Oil Country Tubular Goods From Argentina: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 87 Fed. Reg. 50,054 (Sept. 29, 2022) and accompanying final issues and decision memorandum. On November 21, 2022, Commerce published the corresponding AD order. *See Oil Country Tubular Goods From Argentina, Mexico, and the Russian Federation:*

*Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for the Russian Federation*, 87 Fed. Reg. 70,785 (Nov. 21, 2022).[2]

## SUMMARY OF THE ARGUMENT

Commerce's determination to initiate the investigation based upon record evidence provided by the petitioners regarding industry support – namely, estimated production data for 2020 – is supported by substantial evidence and in accordance with law. Commerce properly determined that the petitioners established industry support for the Petition and satisfied all of the elements required for initiating an AD investigation. *See* 19 U.S.C. § 1673. Additionally, Commerce reasonably determined that polling the domestic industry was unnecessary in light of the substantial evidence on the record establishing that the Petition was "filed by or on behalf of the industry." 19 U.S.C. § 1673a(c)(4)(A). Finally, exceptional circumstances did not exist to warrant extending the deadline to initiate the investigation. Despite Tenaris USA's arguments, Commerce did not ignore record evidence submitted by Tenaris USA. Thus, the Court should sustain Commerce's determination.

## ARGUMENT

### I.     Standard Of Review

In reviewing Commerce's antidumping duty proceedings, the Court sustains any determination made by Commerce unless it is "'unsupported by substantial evidence on the

---

[2] Pursuant to 19 U.S.C. § 1673a(c)(4)(E), Commerce is unable to reconsider issues regarding industry support after the initiation of the investigation. Tenaris USA did not raise challenges to Commerce's industry support determination or its decision to initiate the investigation in its briefs before the agency. *See generally* Tenaris USA's Administrative Brief (C.R. 428); *see also* Tenaris USA's Administrative Rebuttal Brief (C.R. 429). Therefore, neither the preliminary determination nor the final determination analyzes any of the issues raised in Tenaris USA's brief before the Court. *See generally* Pl. Br.

record, or otherwise not in accordance with law.'" *Tianjin Tiancheng Pharm. Co. v. United States*, 366 F. Supp. 2d 1246, 1249 (Ct. Int'l Trade 2005) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).  Even if it is possible to draw two different inconsistent conclusions from the record evidence, this does not mean that Commerce's findings are unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

In reviewing Commerce's construction of a statute, the Court uses the two-part test articulated in *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984).  First, the Court determines "whether Congress has directly spoken to the precise question at issue" and clearly expressed its purpose and intent in the statute.  *See id.* at 842-43. Second, if the statute does not answer the question, the Court assesses whether Commerce's interpretation is "sufficiently reasonable."  *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450-51 (1978) (citation omitted).  Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous."  *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (citation omitted).

## II.    Commerce Lawfully Estimated The Total Domestic OCTG Production By Relying On The Record And Publicly Available Data

Commerce lawfully initiated this investigation with industry support calculations based on record evidence and publicly available 2020 OCTG market data.  Tenaris USA contends that Commerce's initiation based on "anomalous" 2020 data and "outdated" 2018-2019 data failed to support a finding that the Petition was "filed by or on behalf of the industry."  *See generally* Pl. Br. at 12-26.  Tenaris USA further contends that Commerce failed to "ensure that including production data of processors and finishers in its calculation of OCTG production" was

appropriate.  *Id.* at 2, 27-28.  According to Tenaris USA, Commerce should have instead polled the domestic industry and "requested actual production data for the most recent twelve months prior to the filing of the petition to determine whether there was sufficient industry support for the initiation of the investigation."  *Id.* at 15.  As discussed below, Tenaris USA's arguments are without merit.

Commerce shall determine that a petition has been filed by or on behalf of the industry if the domestic producers or workers who support the petition account for:  (1) at least 25 percent of the total production of the domestic like product; and (2) more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for, or opposition to, the petition.  19 U.S.C. § 1673a(c)(4)(A)(i)-(ii).  Commerce measures the level of industry support based on production of the domestic like product.  19 U.S.C. § 1673a(c)(4)(A).  Commerce will measure industry support based on actual production data from the most recently completed calendar year, unless such data are unavailable and Commerce finds alternative data are indicative of actual production levels.  19 C.F.R. § 351.203(e)(1).  Commerce has a longstanding practice of examining the most recently completed calendar year when determining whether there is sufficient industry support to initiate an investigation.  *See, e.g.*, *Initiation of Antidumping Duty Investigation: Circular Seamless Steel Hollow Products from Japan*, 64 Fed. Reg. 63,285, 63,287 (Nov. 19, 1999).

Here, Commerce determined that the most recently completed calendar year is 2020 because the Petition was filed on October 6, 2021.  *See* Initiation Checklist, Attachment II at 16, C.R. 26.  Commerce noted that the petitioners provided reasonable estimates of total 2020 production of OCTG in the United States.  *See id.* at 14.  Specifically, the petitioners provided their own 2020 production data, as well as 2020 production data from ████████████

████████████████████████████████████████████████████████. *See* First

General Issues Questionnaire Response at 3-4 and 8, C.R. 10; *see also* Second General Issues

Questionnaire Response at 1-2 and Ex. 2-5, C.R. 23.  The petitioners reported reasonable

estimates of the rest of the industry's 2020 production data, as actual production data was

unavailable.  *See* First General Issues Questionnaire Response at 5, C.R. 10.

    The petitioners made reasonable estimates of actual production data by relying on ██

████████████████████████████████████████, which the petitioners explained was

the recognized authority on the domestic pipe and tube market.  *See id.*  As a starting point, the

petitioners calculated their own export shipments-to-total shipments ratio (*i.e.*, export shipments:

export and domestic shipments).  *See* Second General Issues Questionnaire Response at Ex. 5.

Then, the petitioners estimated the entire industry's total 2020 shipment data by applying that

ratio to publicly available ████████████████████'s 2020 domestic industry shipment

data.  *See id.*  The petitioners also calculated reasonable estimates of non-petitioning companies'

total 2020 shipments by deducting their own 2020 total shipments from the estimated total

shipments for the entire OCTG industry.  *See id.*  Next, the petitioners approximated non-

petitioning companies' 2020 production by applying non-petitioning companies' production-to-

shipments ratio to those companies' total 2020 shipments data.  *See id.*  Specifically, the

petitioners derived the production-to-shipments ratio by relying on non-petitioning companies'

data from 2018 to 2019, as reported in the ITC's latest full sunset review of OCTG from India,

Korea, Turkey, Ukraine, and the Socialist Republic of Vietnam.  *See id.*  Finally, the petitioners

reported their reasonable estimate of the entire domestic industry's 2020 production data by

adding their own production to the estimated production of non-petitioning companies.  *See id;*

*see also* Initiation Checklist, Attachment II at 5, C.R. 26.

Commerce also calculated its own estimates of the entire industry's actual 2020 production data by relying on a similar, but more conservative methodology. *See* Initiation Checklist, Attachment II at 5, C.R. 26. Commerce calculated the ratio of reported actual production data on the record to domestic shipments by relying on the data from the same ITC publication. *See id.* Then, Commerce applied that ratio to the domestic shipments data from ██████████████████████ to calculate total 2020 production for the entire domestic industry. *See id.* Based on Commerce's methodology, the total 2020 domestic OCTG production was approximately ████████ short tons, which was only about 4.84 percent greater than the petitioners' estimate. *See* Initiation Checklist, Attachment II at 7, C.R. 26. Accordingly, in the absence of actual production data, Commerce found that such estimates are reasonably "indicative of production levels" of the entire domestic industry in 2020, within the meaning of 19 C.F.R. § 351.203(e)(1).

Tenaris USA contends that 2020 was an "anomalous" year in the OCTG market for Commerce to base the industry calculation because there was an oversupply of oil and the COVID-19 pandemic. Pl. Br. at 22-25. Commerce, however, reasonably found that Tenaris USA's concerns about the 2020 market did not warrant a departure from the "longstanding practice of measuring production over the most recently completed calendar year for purposes of determining industry support." Initiation Checklist, Attachment II at 16, C.R. 26. Moreover, as Commerce explained, "Tenaris USA did not provide any production or shipment data or any other relevant data for comparison purposes to support its contention that an alternate time period is more appropriate than calendar year 2020 for purposes of determining industry support." *Id.*; *see also* Initiation Checklist, Attachment II at 21, C.R. 26. Thus, in the absence of Tenaris USA's actual production data or on any reasonable alternative time period, Commerce lawfully

relied on record evidence and continued its longstanding practice by basing its industry calculations on the 2020 data.

Tenaris USA further argues that Commerce failed to address concerns regarding the inclusion of "OCTG processors/finishers in the calculation of domestic production and industry support." Pl. Br. at 27. This argument ignores the clear language of the scope of the *Order*, which includes both finished and unfinished OCTG products. Specifically, the merchandise covered by the scope of the *Order* includes:

> certain OCTG, which are hollow steel products of circular cross-section . . . whether seamless or welded, regardless of end finish, whether finished (including limited service OCTG products) or unfinished (including green tubes and limited service OCTG products) . . . .
>
> Subject merchandise includes material matching the above description that has been finished, packaged, or otherwise processed in a third country, including by performing any heat treatment, cutting, upsetting, threading, coupling, or any other finishing, packaging, or processing that would not otherwise remove the merchandise from the scope of these orders if performed in the country of manufacture of the OCTG.

*See Order* at Appendix-Scope of the Orders; *see also* Initiation Checklist, Attachment II at 14, C.R. 25 (finding that "our examination of the record gives us no reason to believe that these finishing operations should not be included as production of the domestic like product"). This investigation clearly defines the scope as both finished and unfinished OCTG products, and indeed, the ITC consistently included both types of OCTG products in its scope definitions of past proceedings involving OCTG products. *See* Final Determination at 60,209; *see also, e.g.*, *Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam, Inv. Nos. 701-TA-499-500 and 731-TA-1215-1217 and 1219-1223 (Final), USITC Pub. 4489 (September 2014)* at 12. Tenaris USA's argument aims to challenge

the appropriateness of Commerce using the ITC data, which includes OCTG finishing operations in production data.  *See* Pl. Br. at 28.  However, the ITC data on the record is consistent with the investigation's scope, and thus, Commerce properly accounted for production of the domestic like product, including processors/finishers, in its industry support calculations.

Finally, Tenaris USA argues that Commerce inappropriately shifted the evidentiary burden for establishing industry support from the petitioners to Tenaris USA.  *See* Pl. Br. at 29-33.  Specifically, citing to Commerce's regulatory package that was published in the Federal Register on September 20, 2021, Tenaris USA claims that Commerce affirmatively "rejected the notion that a party challenging the existence of sufficient industry support be required to show that other data "'is more accurate than the data in the petition.'"  Pl. Br. at 29 (quoting *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,305 (Dep't of Commerce Sep. 20, 2021) (effective date Nov. 4, 2021) (*Final Rule*)).  But then, according to Tenaris USA, Commerce "effectively treated the alleged failure of Tenaris USA to provide production information" as "tantamount to a failure to cooperate" and improperly "drew an adverse inference against Tenaris USA."  Pl. Br. at 31.

In relevant part, the preamble to the *Final Rule* reads:

> 3. Additional Requirements
> Two commenters suggest that Commerce include a regulatory provision that requires parties objecting to industry support to: (1) If they are domestic producers, provide their affiliation status and whether they are related to a foreign producer; and (2) identify the sources of industry data and indicate why the data is more accurate than the data in the petition. Other commenters disagree with the suggested additions to the proposed regulation and argue that, pursuant to the Act, the petitioner bears the burden of establishing industry support, and not for opposing parties to establish a lack of industry support.

> Response:
> We have not adopted the proposed additions. The suggestion to impose new requirements on parties that object to a petition would establish a substantive change beyond the scope of the procedural rule Commerce has proposed. In addition, in our view, the suggested requirement is unnecessary. The petitioners are responsible for establishing industry support of the petition. To the extent industry support is not established in accordance with the Act, or is unclear from the evidence on the record, Commerce has authority to address these situations as they arise, such as through polling the industry or otherwise determining whether there is sufficient industry support to initiate an AD or CVD investigation.

*Final Rule*, 86 Fed. Reg. at 52,305. While Commerce did not impose a new requirement that non-petitioning parties be required to submit rebuttal factual information for every petition's initial industry support calculation, Tenaris USA confuses factual information that establishes industry support in a petition with rebuttal factual information that would otherwise convince Commerce that its industry support determination is flawed. As discussed above, the petitioning parties are required to submit factual information to establish that the petition has been filed by or on behalf of the industry and that the industry supports the petition. *See generally* 19 U.S.C. § 1673a. The above quoted response from the *Final Rule* states that it is not necessary to require non-petitioning parties to rebut this information because, "to the extent that industry support *is not* established in accordance with the act, or is unclear from the evidence on the record, Commerce has the authority to address these situations as they arise . . . ." *Final Rule*, 86 Fed. Reg. at 52,305 (emphasis added).

What Tenaris USA fails to acknowledge is that Commerce determined that industry support was "*established in accordance with the Act*." *Id*. (emphasis added). Because Commerce determined that the statutory requirements for the petition were satisfied, Commerce determined there was no need to require non-petitioning parties to submit rebuttal factual

information (nor, as the response in the *Final Rule* above acknowledges, would it be appropriate to require non-petitioning parties to then attempt to rebut this determination in every case). However, simply because there is not a requirement on behalf of the non-petitioning parties to submit rebuttal information does not mean that Tenaris USA was prevented from doing so, nor does it mean that, if it had done so, Commerce would have ignored the information. If Tenaris USA questioned the industry support evidence on the record, it was incumbent upon Tenaris USA to submit rebuttal information for Commerce to consider. Notably, Tenaris USA had an opportunity to submit this information (in fact, because the petitioners submitted two supplemental questionnaire responses, it had two). *See* 19 C.F.R. § 351.301(c)(1)(v) (providing 10 days to submit rebuttal factual information after a party files a supplemental questionnaire response).

As noted above, Tenaris USA submitted several comments in response to the petitioners' industry support data. *See* Tenaris USA Oct. 8, 2021 Comments, C.R. 9; Tenaris USA Oct. 15, 2021 Comments, C.R. 12-18; Tenaris USA Oct. 20, 2021 Comments, C.R. 22. However, none of Tenaris USA's arguments were supported by actual evidence on the record that Commerce could rely upon nor did Tenaris USA provide any additional information on the record for Commerce to consider. For example, Tenaris USA listed thirty-five exhibits in support of its contention that industry support has not been met and that 2020 was an anomalous year. *See* Tenaris USA Oct. 15, 2021 Comments at Exhibit List (PDF p. 30-32), C.R. 12-18. However, as Commerce noted in the Initiation Checklist, none of these exhibits actually provide data that Commerce could use as an alternative for the data supplied by the petitioners. Initiation Checklist, Attachment II at 13-18, C.R. 26. Most of the exhibits were either articles about Tenaris USA or about the oil or steel industry generally, and Commerce did not find any of them

persuasive with regard to challenging the petitioners' industry support data. *See id.* at 15. Commerce cannot be blamed for Tenaris USA's failure to submit persuasive rebuttal information on the record.

Tenaris USA counters that it was under no obligation to submit rebuttal factual data, and Commerce identifying this failure is akin to drawing an adverse inference against Tenaris USA. Pl. Br. at 30-31. Tenaris USA misunderstands fundamental aspects of the statute. 19 U.S.C. § 1677e provides that if necessary information is not available on the record, or an interested party withholds information, fails to provide information, significantly impedes a proceeding, or provides unverifiable information, Commerce may rely upon facts otherwise available on the record. *See* 19 U.S.C. § 1677e(a). As a threshold matter, Commerce analyzed the data provided by interested parties and concluded that there was information on the record with which it could make its determination. *See* Initiation Checklist, Attachment II at 18, C.R. 26. As described above, Commerce determined that there *was* sufficient information on the record to initiate, not that record information was missing. Contrary to Tenaris USA's contention, Commerce did not use any facts otherwise available or an adverse inference in making its industry support determination; instead, Commerce relied on the record evidence and made its determination based on that information.

The cases Tenaris USA relies on to support its argument are completely inapposite and equally unconvincing. *See* Pl. Br. at 31-32. (citing *Risen Energy Co., Ltd. v. United States*, 611 F. Supp. 3d 1384 (Ct. Int'l Trade 2022), *Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346, 1352 (Ct. Int'l Trade 2019), *Saha Thai Steel Pipe Pub. Co., LTD v. United States*, 605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022)). As Tenaris USA acknowledges, the context and factual scenarios in these cases are completely different from the facts of this case. Pl. Br. at 31.

Contrary to Tenaris USA's contention, this situation is wholly unlike when Commerce fails to provide mandatory respondents with an opportunity to correct deficiencies in their respective questionnaire responses. As explained above, Tenaris USA is not required to submit any particular information, a sharp contrast to Commerce's administrative requirements for alerting parties to deficiencies in their submissions. Commerce's basis for its determination in this case was the evidence on the record as provided by the interested parties and as such should be sustained.

Tenaris USA's attempts to reframe the issue cannot save it from its decision to not provide rebuttal factual information. Citing to cases such as *Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379, 1388 (Ct. Int'l Trade 2019); *Qingdao Taifa Group Co. v. United States*, 710 F. Supp. 2d 1352 (Ct. Int'l Trade 2010); and *Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (Ct. Int'l Trade 1993) is unavailing. Pl. Br. at 32. In *Jindal*, this Court concluded that Commerce must alert a party of a deficiency in the information it provides and, if Commerce requires clarification, it is incumbent upon Commerce to issue appropriate supplemental questionnaires on a case-by-case basis. *See Jindal*, 365 F. Supp. 3d at 1388-89. In this case, Tenaris USA, as it has repeatedly argued, was not required to submit specific industry support information to Commerce. Where Tenaris USA provided record evidence, Commerce analyzed that information and made determinations in consideration of that evidence. *See, e.g.*, Initiation Checklist, Attachment II at 13-14, C.R. 25 (referencing Tenaris USA's argument with respect to mills represented by the USW).

Similarly, in *Qingdao* and in *Sigma*, this Court explained that if an interested party has "not supplied enough information, the burden shifts to Commerce to ask for more information." *Qingdao*, 710 F. Supp. 2d at 1357; *see also Sigma*, 841 F. Supp. at 1267 ("The burden of proof

to show that a company is independent is on the respondent, but if it has not supplied enough information, the burden shifts to Commerce to ask for more information"). However, Commerce concluded that it did not need more information, and that petitioners had satisfied the evidentiary burden for industry support. It was Tenaris USA's responsibility to provide any additional rebuttal factual information on the record that it wanted Commerce to consider; Tenaris USA simply chose not to do so. Thus, Commerce's industry support determination should be sustained.

### III. Commerce's Determination To Not Poll The Industry Was Based On Substantial Evidence And In Accordance With Law

Commerce's decision to rely upon other information to determine if there is support for the Petition as opposed to polling the domestic industry is based on substantial evidence and in accordance with law. *See* Initiation Checklist, Attachment II at 6, 18-19, C.R. 26. Tenaris USA argues that Commerce erred in not seeking actual production data for the most recent twelve months prior to the filing of the petition by polling the domestic industry. Pl. Br. at 35-45. Tenaris USA also argues that Commerce should have extended the period of time for making its determination. *See id.* Contrary to Tenaris USA's arguments, Commerce complied with all aspects of the statute when it made the decision to not poll the industry.

Pursuant to the statute:

> If the petition does not establish support of domestic producers or workers accounting for more than 50 percent of the total production of the domestic like product, the administering authority shall—
>
> (i) poll the industry or rely on other information in order to determine if there is support for the petition as required by subparagraph (A) . . .

19 U.S.C. § 1673a(c)(4)(D)(i).  Further, "{i}n any case in which the administering authority is required to poll or otherwise determine support for the petition by the industry under paragraph (4)(D), the administering authority may, in exceptional circumstances, apply subparagraph (A) by substituting 'a maximum of 40 days' for '20 days'."  19 U.S.C. § 1673a(c)(1)(B).

The express language of the statute directly contemplates the actions that Commerce took during the initiation stage of this investigation.  Section 1673a(c)(4)(D) requires Commerce to poll the industry *or* rely on other information to determine industry support if the petition does not establish the support of the domestic producers who account for more than 50 percent of the total production of the domestic like product.  Here, because the Petition did not establish the 50 percent threshold of the total production of the domestic like product, Commerce relied upon other information on the record to determine industry support for the Petition, as contemplated by the statute.  Specifically, the petitioners provided ███████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ the Petition.  *See* Initiation Checklist, Attachment II at 6, 19, C.R. 26. The petitioners provided reasonably available information, in accordance with the requirements of the statute and Commerce's regulations, to account for all production of the domestic like product in their industry support calculation.  *See id*.  The use of the conjunction "or" in section 1673a(c)(4)(D)(i) is to present Commerce with two distinct options if the petition does not establish support of domestic producers accounting for more than 50 percent of the total production of the domestic like product.  Commerce concluded that it could rely upon other information to determine industry support; therefore, it determined that polling the domestic

industry was not necessary.  *See* Initiation Checklist, Attachment II at 6, 19, C.R. 26.

Commerce's determination was reasonable and in accordance with law.

Contrary to Tenaris USA's contention, Commerce properly exercised its discretion to conclude that "exceptional circumstances" did not warrant extending the period of time to determine industry support.  19 U.S.C. § 1673a(c)(1)(B); *see also Pokarna Engineered Stone Limited v. United States*, 547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021), aff'd 56 F.4th 1345 (Fed. Cir. 2023) ("{E}ven assuming Commerce could have extended its deadline, doing or not doing so was within the agency's discretion.").  Tenaris USA's disagreements with Commerce's factual conclusions about the record did not make this an exceptional circumstance requiring Commerce to extend the deadline for initiating the investigation.

Finally, contrary to Tenaris USA's contention, Commerce complied with the statute when it relied upon other information to determine support for the petition, and reasonably applied its discretion in deciding not to extend the deadline to initiate the investigation.  19 U.S.C. § 1673a.  At no point during the proceeding did Commerce proceed outside the bounds of the statute and its regulations.  Tenaris USA's arguments come down to factual disagreements with Commerce's approach to the evidence on the record.  Commerce's determination, however, is supported by substantial evidence and otherwise in accordance with law, and should be sustained.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiffs' motion and sustain Commerce's final determination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

IAN ANDREW McINERNEY
Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

/s/Hardeep K. Josan
HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax:  (212) 264-1916
Email: hardeep.k.josan@usdoj.gov

September 22, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,280 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

 s/ Hardeep K. Josan
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division