## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; AND SIDERCA S.A.I.C., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; AND WELDED TUBE, <br><br> Defendant-Intervenors. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Court No. 22-00343

# NON-CONFIDENTIAL
**Business Proprietary Information has been deleted from Pages 4, 6, 13-14, and 18.**

## REPLY IN SUPPORT OF PLAINTIFFS' RULE 56.2 MOTION
## FOR JUDGMENT UPON THE AGENCY RECORD

Gregory J. Spak
Frank J. Schweitzer
Kristina Zissis
Matthew W. Solomon

WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

October 20, 2023

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

    A.   Commerce's Decision to Initiate the AD Investigation of OCTG from
        Argentina is Unsupported By Substantial Evidence and Otherwise
        Contrary to Law ........................................................................................3

        1.   Record evidence demonstrates that 2020 was an anomalous period
            characterized by unprecedented market conditions which was not
            representative of the OCTG market and provided an insufficient basis
            for the industry support calculations.............................................................3

        2.   Commerce's reliance on data from 2018 and 2019 to make
            adjustments to already unreliable 2020 data to attempt to account for
            missing production data further skewed the industry support
            calculations ...............................................................................................7

        3.   Commerce failed to consider whether it had double-counted certain
            production data in the industry support calculation ....................................9

        4.   Commerce inappropriately shifted the evidentiary burden to Tenaris.......10

        5.   Tenaris raised concerns two days post-petition filing...............................12

    B.   Commerce's Failure to Poll the Domestic Industry and Seek Actual
        Production Data for the 12-Month Period Prior to the Filing of the Petition
        is Unsupported by Record Evidence, Contrary to Law, and an Abuse of
        Discretion ..................................................................................................13

        1.   The statute mandates polling given the insufficient information on the
            record for Commerce to determine industry support and to initiate the
            investigation ...............................................................................................14

        2.   Commerce erred in determining that "exceptional circumstances" did
            not exist......................................................................................................15

        3.   Commerce abused its discretion in refusing to poll the industry to
            collect actual production data ....................................................................18

    C.   Contrary to Defendant-Intervenors' Arguments, if the Petition Lacked
        Industry Support, Commerce Could Not Treat the Investigation as "Self-
        Initiated" ....................................................................................................20

III.  CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegheny Ludlum Corp. v. United States*,
112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000)  ..............................................................7, 9, 12, 17

*Atlantic Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) ...............................................................................................7

*Chr. Bjelland Seafoods A/S v. United States*,
19 C.I.T. 35 (1995)  ..................................................................................................................17

*Citrosuco Paulista, S.A. v. United States*,
704 F. Supp. 1075 (Ct. Int'l Trade 1988)  .............................................................................. 21

*Clearon Corp. v. United States*,
38 Int'l Trade Rep. (BNA) 1960 (Ct. Int'l Trade 2016)  .......................................................19

*Consol. Bearings Co. v. United States*,
412 F.3d 1266 (Fed. Cir. 2005) ..............................................................................................19

*Huaiyin Foreign Trade Corp. v. United States*,
322 F.3d 1369 (Fed. Cir. 2003) ..........................................................................................7, 12

*Jiangsu Jiasheng Photovoltaic Tech. v. United States*,
28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014)  ..........................................................................19

*Mosaic Co. v. United States*,
Consol. Court No. 21-00116, Slip Op. 23-134 (Sept. 14, 2023)  ...........................................11

*Nucor Corp. v. United States*,
371 Fed. Appx. 83 (Fed. Cir. 2010) ..........................................................................................7

*Pokarna Engineered Stone Ltd. v. United States*,
547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021)  .................................................................. 17-18

*Shandong Dongfang Bayley Wood Co. v. United States*,
375 F. Supp. 3d 1339 (Ct. Int'l Trade 2019) .......................................................................19

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ..............................................................................................19

*SolarWorld Ams., Inc. v. United States*,
910 F.3d 1216 (Fed. Cir. 2018) ........................................................................................... 6-7

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
  966 F.2d 660 (Fed. Cir. 1992) ........................................................................ 21-22

*USX Corp. v. United States*,
  655 F. Supp. 487 (Ct. Int'l Trade 1987) .............................................................17

## STATUTES AND REGULATIONS

5 U.S.C. § 706(2)(A) ........................................................................................ 18

19 U.S.C. § 1673a(a) ....................................................................................... 22

19 U.S.C. § 1673a(a)(1) ....................................................................................20

19 U.S.C. § 1673a(b) .......................................................................................22

19 U.S.C. § 1673a(c)(1)(B) ...........................................................................16, 19

19 U.S.C. § 1673a(c)(4)(A) .......................................................................1, 20-22

19 U.S.C. § 1673a(c)(4)(D) .............................................................................20

19 U.S.C. § 1673a(c)(4)(D)(i)...................................................................1-2, 14-15

19 C.F.R. § 351.203(e)(1) ...........................................................................2, 15, 20

## ADMINISTRATIVE DETERMINATIONS

*Sugar From Mexico: Initiation of Antidumping Duty Investigation*,
  79 Fed. Reg. 22,795 (Apr. 24, 2014) ..............................................................18

## OTHER MATERIALS

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,
  H.R. REP. NO. 103-316, vol. 1 (1994) ..............................................................21

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing
  Duty Laws*,
  86 Fed. Reg. 52,300 (Sept. 20, 2021) .......................................................11, 14, 21

NON-CONFIDENTIAL VERSION

## I.      INTRODUCTION

The circumstances surrounding the filing of the petition warranted caution by the U.S. Department of Commerce ("Commerce"), a serious review of the record evidence before it, and a rigorous evaluation of the industry support calculations to ensure Commerce was legally justified in initiating the antidumping duty ("AD") investigation.  Commerce did none of these things because it could "see no reason to depart from {its} longstanding practice."  Initiation Checklist at Attachment II at 16 (Oct. 27, 2021) (C.R. 26; P.R. 40).[1]  The record established a once-in-a-lifetime confluence of global market conditions affecting the oil country tubular goods ("OCTG") market in 2020, the period relied upon to calculate industry support, that fundamentally differed from the market in October 2021 when the petition was filed.  The largest U.S. OCTG producer, Tenaris USA (comprised of Maverick Tube Corporation, Tenaris Bay City, Inc., and IPSCO Tubulars Inc.), was not a petitioner.  Because Petitioners accounted for less than 50 percent of domestic production, Tenaris USA requested that Commerce exercise its authority under 19 U.S.C. § 1673a(c)(4)(D)(i) to poll the domestic industry and collect actual production data from the 12-month period prior to the filing of the petition.  Commerce refused.

Claims that Commerce "faithfully followed the statute" and "lawfully initiated" the investigation pursuant to the statutory requirements are wrong.  *See* Defendant Br. at 10-11 (ECF No. 46-47); Defendant-Intervenors Br. at 15 (ECF No. 44-45).  Commerce's determination that the petition was filed "by or on behalf of the industry," as required by the statute at 19 U.S.C. § 1673a(c)(4)(A), is unsupported by substantial evidence and is otherwise contrary to law.  Consistent with the statutory mandate and Commerce's practice, when petitioners supporting a

---

[1] Citations to the administrative record indicate the public and confidential record document numbers ("P.R." and "C.R.").

petition account for less than 50 percent of domestic production, Commerce must poll the industry or rely on other information indicative of production levels to determine whether the petition has been filed "by or on behalf of the industry."   19 U.S.C. § 1673a(c)(4)(D)(i); 19 C.F.R. § 351.203(e)(1).  Commerce failed to do so here.

Commerce conceded it relied on "*estimated* production data for 2020."  Defendant Br. at 9 (emphasis added).  Its reliance on those data was contrary to law and unsupported by substantial evidence because the data were not "indicative of production levels."  19 C.F.R. § 351.203(e)(1).  Commerce failed to adequately explain why it relied on data from 2020 (including *estimated* data) given the record evidence demonstrating that historic OCTG market conditions in 2020 rendered the period unreliable for assessing industry support for a petition filed under drastically different market conditions in October 2021.  Commerce did not address particular evidence related to the unprecedented market conditions, despite the largest U.S. OCTG producer imploring it to do so.  Commerce could "see no reason" to do so.  Using data from the most recently completed calendar year is Commerce's practice, but the 2020 data were unrepresentative and Commerce compounded this deficiency with its adjustment to derive flawed estimates for missing data from that unrepresentative period.  Commerce could have addressed these data deficiencies by simply exercising its statutory authority to poll the domestic industry to collect actual production data, as Tenaris USA requested, and as Commerce previously has done under similar circumstances.

Defendant and Defendant-Intervenors then blame Tenaris USA for not providing its production information – even though (1) Tenaris USA was *not* required to do so, (2) Commerce had *not* requested it, and (3) *Tenaris USA had requested that Commerce poll the entire industry, including Tenaris USA, to request the production information from all members of the domestic industry for the most recent 12-month period before the petition was filed.*

Defendant and Defendant-Intervenors fail to defend other aspects of the flawed initiation. They do not justify Commerce's use of mixed data, arbitrarily drawn from an even more remote period (2018 and 2019) to calculate a production-to-shipments ratio for the missing production data from 2020. Nor do they address the merits of Plaintiffs' argument that Commerce may have double-counted production of finished and unfinished OCTG; rather they shrug this off and attribute the consequences to the scope of the investigation.

Finally, Defendant and Defendant-Intervenors seek to shift the evidentiary burden regarding the sufficiency of industry support to Plaintiffs. Petitioners alone bear the burden to satisfy the statutory requirements for initiation by petition. They failed to carry that burden. Commerce's initiation of the investigation was unlawful, unsupported by substantial evidence, and provided no basis for the resulting investigation and antidumping duty order ("AD Order").

## II.   ARGUMENT

### A.   Commerce's Decision to Initiate the AD Investigation of OCTG from Argentina is Unsupported By Substantial Evidence and Otherwise Contrary to Law

#### 1.   Record evidence demonstrates that 2020 was an anomalous period characterized by unprecedented market conditions which was not representative of the OCTG market and provided an insufficient basis for the industry support calculations

Defendant argues that Commerce "reasonably found that Tenaris USA's concerns about the 2020 market did not warrant a departure from the 'longstanding practice of measuring production over the most recently completed calendar year for purposes of determining industry support.'" Defendant Br. at 13 (citing Initiation Checklist at Attachment II at 16). The OCTG market fundamentally shifted between 2020 and October 2021, when the petition was filed. The industry support calculations relied upon by Commerce, based on 2020 production and shipment data (partially estimated), did not reflect the market when Petitioners filed the petition in late 2021,

and thus could not provide Commerce with a reasonable basis for determining whether the petition was filed "by or on behalf of the industry." The record evidence regarding 2020 demonstrated: a collapse in demand for oil and gas, the key driver for OCTG demand; historic prices for hot-rolled coil ("HRC"), the primary input for producing welded OCTG production; and plant closures. In contrast, 2021 was marked by increased demand for OCTG and the restart of mills. *See, e.g.,* Tenaris' October 15, 2021 Comments at 16, Exhibits 25, 29, 30 (C.R. 12-18; P.R. 22-28). This information bears directly on whether production from this period could be used to assess industry support for a petition filed in October 2021.

  ***Collapse in demand for oil and gas.*** The record demonstrated that both demand and price for oil and gas plummeted in 2020. The oversupply of oil by the Organization of the Petroleum Exporting Countries ("OPEC"), on top of the global COVID-19 pandemic, ***led to negative oil prices in 2020 – below \$0 for the first time ever***. *See* Tenaris' October 15, 2021 Comments at Exhibit 2 (*"Oil prices dip below zero as producers forced to pay to dispose of excess"* and "{t}he market crash underlined the impact of the coronavirus outbreak on oil demand as the global economy slumps"); *id.* at Exhibit 3 ("global oil market … utter demand collapse due to worldwide lockdowns as a result of COVID-19"); *id.* at Exhibit 4 ("oil prices and drilling activity have been depressed since the onset of Covid-19 … Shipments of OCTG products in the US fell by 49pc in 2020 to 957,000 short tons (st) compared to the 1.87mn st shipped in 2019"). Defendant-Intervenors themselves noted that, "{a}s a result of these declines in oil and gas activity, ***apparent consumption for OCTG cratered*** by [  ] percent from 2018 to 2020, and then fell again by [  ] percent from the first half of 2020 to the first half of 2021." *See* Petition Vol. I at 33 (emphasis added) (C.R. 1-6; P.R. 1-6). The decline in demand for oil and gas reduced OCTG demand and, in turn, production.

***Historic prices for the primary input to produce welded OCTG.***  Tenaris USA also provided evidence relating to the historic price of HRC in 2020 and its impact on OCTG supply. *See, e.g.*, Tenaris' October 8, 2021 Comments at Exhibit 3 ("Since March 2020, steel prices are up a staggering 215%") (C.R. 9; P.R. 15); Tenaris' October 15 Comments, 2021 at Exhibit 4 (stating that "steel prices have nearly tripled in the last seven months," and noting the drastic decrease in OCTG shipments in 2020).  The high HRC prices resulted in a "slowdown in production of finished pipe products."  Tenaris' October 8, 2021 Comments at 6; *see also* Tenaris' October 15, 2021 Comments at 9 ("the price of HRC has skyrocketed, severely impacting the domestic production of welded OCTG").

***OCTG production facility closures.***  Tenaris explained on the record before Commerce that these conditions contributed to Tenaris USA's difficult decision to temporarily close all four of its U.S. welded OCTG production facilities in Texas, Arkansas, Iowa, and Kentucky.  Tenaris' October 15, 2021 Comments at Ex. 28 (Tenaris USA website, "Tenaris to adjust production, temporarily suspend operations at US facilities" (Mar. 19, 2020)).

This evidence cannot be reconciled with Defendant's position that "none of Tenaris USA's arguments were supported by actual evidence on the record" because none of the "listed thirty-five exhibits … actually provide data that Commerce could use."  Defendant Br. at 17.  Defendant-Intervenors similarly bemoan "a lack of empirical evidence supporting" anomalous market conditions and only "tangential information provided about phenomena other than production values."  Defendant-Intervenors Br. at 24.  These assertions are incorrect.  The extensive record evidence relating to the historic confluence of global market conditions affecting the U.S. OCTG market in 2020 compared to 2021, and U.S. production of OCTG, is key to Commerce's determination of whether the petitions was supported by the domestic industry *as constituted at*

*the time of filing of the petition.*  Indeed, ***Defendant-Intervenors acknowledged in their petition that these market conditions affecting both supply and demand of OCTG had a direct bearing on demand for OCTG***.  For example, the petition noted that "{t}he coronavirus pandemic has led the global economy to slam the brakes, leading to an extremely sharp drop in demand for oil." Petition Vol. I at Exhibit I-24.  The petition further states:

> {I}n the Spring and Summer of 2020, the rig count dropped even more precipitously, bottoming out at a historically low 244 rigs in August 2020. Even after a slight recovery, the rig count was still only 351 rigs by the end of 2020, which is a 56.4 percent drop from the same period the year before. With the onset of the COVID-19 pandemic and resulting economic contraction, *oil prices plummeted and reached negative territory for the first time in history* in April of 2020 … As a result of these declines in oil and gas activity, *apparent consumption for OCTG cratered* by [      ] percent from 2018 to 2020, and then fell again by [      ] percent from the first half of 2020 to the first half of 2021.

*Id.* at 32-33 (emphasis added).

Defendant-Intervenors similarly discount contemporaneous news accounts documenting market conditions: "Tenaris cites news reports of factors it claims affected OCTG production levels – including COVID, high prices for flat-rolled steel, and an oversupply of oil – but no empirical evidence of changes in OCTG production between 2020 and 2021 or legal precedent that would make Commerce's reliance on that data unreasonable."  Defendant-Intervenors Br. at 21.  These statements run counter to a record that establishes historic market disruptions in 2020 of domestic production, including mill shutdowns, and improvements in 2021.  Defendant-Intervenors' argument is also at odds with their own statements in the underlying petition, in which they underscored the relationship between market conditions and demand, and hence production. *See* Petition Vol. I at 32-33.

For Commerce's determination to be supported by substantial evidence, it must "look to 'the record as a whole, including evidence that supports as well as evidence that *fairly detracts* from the substantiality of the evidence.'" *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216,

1222 (Fed. Cir. 2018) (citation omitted) (emphasis added).  In failing to consider the evidence related to the 2020 market compared to 2021, Commerce's determination did not satisfy the substantial evidence standard.  *See Nucor Corp. v. United States*, 371 Fed. Appx. 83, 87 (Fed. Cir. 2010) ("Commerce thus pointed to no substantial evidentiary support for its decision … to disregard the extensive contrary evidence{.}").

The Court of Appeals for the Federal Circuit ("CAFC") has confirmed that the existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ("taking into account *the entire record* …") (emphasis added)).  "{I}t is … well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence." *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000).

2.     **Commerce's reliance on data from 2018 and 2019 to make adjustments to already unreliable 2020 data to attempt to account for missing production data further skewed the industry support calculations**

Defendant and Defendant-Intervenors fail to address the distortive effects of Commerce's reliance on 2018-2019 production and shipment data to adjust the flawed 2020 calculations. Defendant-Intervenors argue "Tenaris' complaint is essentially that 2018 and 2019 are not the twelve months immediately preceding the filing of the Petitions, and that using market information from these years somehow 'skewed' the result." Defendant-Intervenors Br. at 22-23.  The use of 2018-2019 data is even more egregious than this statement admits.  Tenaris explained the use of the 2018-2019 data is *actually distortive* because it skews the result, and is outdated and

unrepresentative of non-petitioners' production-to-shipments ratio. *See* Tenaris' October 15, 2021 Comments at 6-7; *see also* Tenaris Initial Br. at 25 (ECF No. 40-41).

As an initial matter, an adjustment using data from a different period cannot reasonably be expected to satisfy Commerce's legal obligation. The 2018 data is more outdated than, and different from, the 2019 or 2020 data, and the 2019 data is likewise different from the 2020 data (a period that already is not representative of the domestic industry that filed the petition in October 2021). There is no justification from Commerce for using a mix of 2018 ***and*** 2019 data, or, for that matter, only 2019 or 2018 data. None of these distortive alternatives is preferable to seeking actual data by polling.

Commerce failed to address this issue in its Initiation Checklist, and both Defendant and Defendant-Intervenors again fail to rebut the substance of this argument in their respective briefs. *See* Defendant Br. at 10, 12 (only noting that "the petitioners derived the production-to-shipments ratio by relying on non-petitioning companies' data from 2018 to 2019, as reported in the ITC's latest full sunset review of OCTG from India, Korea, Turkey, Ukraine, and the Socialist Republic of Vietnam," and that Tenaris USA argued that the 2018-2019 data were "outdated"); Defendant-Intervenors Br. at 22-23.

Commerce's "alternative methodology" suffers from the same defects because it generates estimated production data based on domestic shipment data from the anomalous 2020 market period and it also uses this 2018-2019 ratio. *See* Initiation Checklist at Attachment II at 17 (Commerce "used the publicly available record information on industry-wide production and shipments for 2018-2019 to derive the ratio of industry-wide shipments to production and directly applied this ratio to the 2020 domestic shipment data available for the entire U.S. OCTG industry to approximate total U.S. production of OCTG in 2020").

**NON-CONFIDENTIAL VERSION**

When applied to the 2020 shipment and production data, the 2018-2019 calculated ratio further distorts the estimated production figures that serve as the basis for Petitioners' industry support calculations.   There are multiple problems with Commerce's shipment-to-production adjustment: (1) the ratio is from a mix of data from different periods (2018-2019); (2) it was applied to shipment and production data from a different period, 2020; and (3) 2020 was anomalous and did not provide a reasonable basis for examining the representativeness of industry support for the petition at the time of filing.   Commerce cannot simply dismiss Tenaris' concerns regarding these deficiencies without justification.   It represents a failure by Commerce to consider record evidence which, on its face, provided significant support for an alternative conclusion.  *See Allegheny Ludlum Corp.*, 112 F. Supp. 2d at 1165 ("{I}t is … well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence").

> **3.** **Commerce failed to consider whether it had double-counted certain production data in the industry support calculation**

In their brief, Defendant-Intervenors claim that "Tenaris' transparent delaying tactic in arguing that Commerce should investigate whether Petitioners double-counted producers with finishing operations … had no factual basis," and assert that "Petitioners' production data were certified as accurate by both company officials and their counsel, and Commerce could rely on them, as it always does with the volumes of information submitted pursuant to such certifications." Defendant-Intervenors Br. at 23.  Defendant only argues that finished and unfinished OCTG are both within the scope of the investigations, and entirely fails to address Tenaris' arguments regarding potential double-counting.  *See* Defendant Br. at 14.

Tenaris did not seek to delay the proceeding. Tenaris identified a potential distortion related to Petitioners' composition with direct implications for the industry support calculation and requested that Commerce address the issue. Moreover, the potential distortion is not one of scope. Whether the scope of the investigation encompasses both unprocessed and finished OCTG has zero bearing on the issue. That "processed" pipe is categorized under "production" has obvious implications: as a hypothetical, one ton of green tube produced by an OCTG producer could very well have been counted as *two tons* when the "production" was reported also by a processor. *See* Tenaris Initial Br. at 27-28. In the underlying investigation, Commerce made no effort to confirm whether Petitioners were counting the same "production" volume twice. Simply retreating to "the scope of the investigation" neither addresses the potential double-counting concern nor explains how Commerce has ensured the reliability of the industry support calculation. This failure warrants remand.

### 4.   Commerce inappropriately shifted the evidentiary burden to Tenaris

Defendant argues that "{i}f Tenaris USA questioned the industry support evidence on the record, it was incumbent upon Tenaris USA to submit rebuttal information for Commerce to consider." Defendant Br. at 17. This assertion is contradicted by the record before Commerce and is contrary to Commerce's clear statement that petitioners have the burden to affirmatively establish industry support. Here, the record reflects Petitioners' repeated attempts to demonstrate the petition was "filed by or on behalf of the industry" and flaws with the successive calculations and the distorted data on which they were based. Tenaris submitted multiple comments with supporting evidence demonstrating that Petitioners failed to meet their burden.

Claims that Tenaris failed to "convince Commerce that its industry support determination is flawed" run directly counter to who bears the burden to establish industry support. *Id*. at 16. Commerce has expressly rejected the proposition that a party challenging the existence of

sufficient industry support be required to show that other data "is more accurate than the data in the petition." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,305 (Sept. 20, 2021) ("*Final Rule*"). Commerce confirmed that the burden rests on petitioners: "The petitioners are responsible for establishing industry support of the petition." *Id*. Here, Petitioners did *not* satisfy their burden to demonstrate that the petition was filed "by or on behalf of the industry" despite Commerce providing them the opportunity to submit multiple revisions to their industry support calculation.

Tenaris submitted rebuttal information that directly challenged the very basis on which Commerce determined that the "statutory requirements for the petition were satisfied" and requested that Commerce poll in order to collect actual data rather than relying on flawed data. Defendant-Intervenors incorrectly claim that "Tenaris failed to create a record" sufficient to challenge Petitioners' industry support calculations. Defendant-Intervenors Br. at 24 (citing *Mosaic Co. v. United States*, Consol. Court No. 21-00116, Slip Op. 23-134 at 17 (Sept. 14, 2023) ("The burden of record creation lies in general with the parties …")) Defendant merely acknowledges Tenaris' arguments and states that "concerns about the 2020 market did not warrant a departure from the 'longstanding practice of measuring production over the most recently completed calendar year for purposes of determining industry support.'" Defendant Br. at 13 (citations omitted). In fact, Tenaris USA submitted more than 200 pages of argument and documentation challenging the data underlying Petitioners' successive industry support calculations. Tenaris USA also repeatedly requested that Commerce poll to obtain production data from Tenaris USA and the other domestic producers. *See, e.g.*, Tenaris' October 8, 2021 Comments at 2, 8; Tenaris' October 15, 2021 Comments at 5, 7, 10-11, 23; Tenaris' October 20,

2021 Comments at 2-9 (C.R. 22; P.R. 31); Tenaris' October 22, 2021 Comments at 2-3, 5-6 (C.R. 25; P.R. 35).

Commerce had justified its failure to engage with evidence regarding the flawed data or to poll the industry by pointing to Tenaris not offering up production or shipment data without any request from Commerce.  *See* Initiation Checklist at Attachment II at 16.  That purported justification to ignore the evidence that was presented does not meet the substantial evidence statutory standard.  *See, e.g.*, *Huaiyin Foreign Trade Corp.*, 322 F.3d at 1374 (finding that the existence of substantial evidence is determined "by considering the record *as a whole*, including evidence that supports as well as *evidence that 'fairly detracts from the substantiality of the evidence.'*" (emphasis added)).

Defendant-Intervenors contend that Tenaris asks the Court to "re-weigh the evidence" by considering the record evidence Tenaris submitted.  *See* Defendant-Intervenors Br. at 24-25.  Commerce *declined to even consider* the detracting evidence that reduced the probative value of reliance on the record before it for establishing industry support.  Contrary to this Court's precedent, the evidence was never evaluated – much less "weighed" – in the first place.  *See Allegheny Ludlum Corp.*, 112 F. Supp. 2d at 1165 (Commerce determination not supported by substantial evidence when it fails to discuss record evidence providing significant support for an alternative conclusion).

### 5.    Tenaris raised concerns two days post-petition filing

Also without merit is Defendant's characterization of Tenaris' opposition to the petition as having been registered only "four days before Commerce's statutory deadline for determination on initiation of the investigation."  Defendant Br. at 7.  There are no grounds to suggest that

Commerce and the parties did not have adequate notice that Tenaris USA considered there was insufficient industry support to initiate the investigation.

Tenaris raised specific concerns regarding support for the petition only *two days* after it was filed. *See* Tenaris' October 8, 2021 Comments. Tenaris' October 8, 2021 submission was the first of *four* substantive submissions challenging Petitioners' successive industry support calculations. *See* Tenaris' October 8, 2021 Comments; Tenaris' October 15, 2021 Comments; Tenaris' October 20, 2021 Comments; Tenaris' October 22, 2021 Comments. On October 21, 2021, counsel to Tenaris USA met with Commerce officials to reiterate Tenaris USA's concerns stated in the previously submitted three sets of comments, including that Commerce poll the domestic industry to determine whether the petition had the statutorily-required level of domestic industry support. Commerce's memorandum to the file confirms that "{d}uring the meeting, counsel to Tenaris USA raised concerns noted in their submissions on the record of this proceeding regarding industry support." Memorandum from Jill E. Pollack to the File, re: *Petitions for the Imposition of Antidumping and Countervailing Duties on Imports of Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and the Russian Federation* (Oct. 21, 2021) (P.R. 34) ("Ex Parte Meeting Memo").

**B.    Commerce's Failure to Poll the Domestic Industry and Seek Actual Production Data for the 12-Month Period Prior to the Filing of the Petition is Unsupported by Record Evidence, Contrary to Law, and an Abuse of Discretion**

Given the record before Commerce regarding a petition that lacked sufficient support on its face, concerns about industry standing from Tenaris, the largest U.S. producer, the propriety of using 2020 data, the use of a flawed adjustment ratio, and a double-counting concern, combined with the fact that even with reliance on "other information" Petitioners were [

NON-CONFIDENTIAL VERSION

], compelled Commerce to poll the industry, as it has done in prior cases when the level of industry support was unclear.

Tenaris repeatedly requested that Commerce exercise its authority under 19 U.S.C. § 1673a(c)(4)(D)(i) to poll the domestic industry and collect actual production data from the 12-month period prior to the filing of the petition. *See* Tenaris' October 8, 2021 Comments at 2, 8; Tenaris' October 15, 2021 Comments at 5, 7, 10-11, 23; Tenaris' October 20, 2021 Comments at 2-9; Tenaris' October 22, 2021 Comments at 2-3, 5-6; Ex Parte Meeting Memo. The level of industry support was "unclear from the evidence on the record" and Commerce's initiation in these circumstances is unsupported by record evidence, contrary to law, and an abuse of discretion. *See Final Rule*, 86 Fed. Reg. at 52,305 ("To the extent industry support is not established in accordance with the Act, or is unclear from the evidence on the record, Commerce has authority to address these situations as they arise, such as through polling the industry or otherwise determining whether there is sufficient industry support to initiate an AD or CVD investigation"). Commerce's failure to poll in the circumstances of this case was legal error.

1. **The statute mandates polling given the insufficient information on the record for Commerce to determine industry support and to initiate the investigation**

Defendant claims that it "complied with all aspects of the statute when it made the decision to not poll the industry." Defendant Br. at 20. Because the statute allows Commerce to "poll the industry or rely on other information" in cases where the petition does not establish support of domestic producers or workers accounting for more than 50 percent of the total production of the domestic like product, Commerce argues its reliance on "other information" was in accordance with law. *See id.* at 20-21; 19 U.S.C. § 1673a(c)(4)(D)(i). Similarly, Defendant-Intervenors argue that the "petition sufficiently demonstrate{d} domestic industry support," and thus Commerce was not required to poll the industry. Defendant-Intervenors Br. at 26-27.

NON-CONFIDENTIAL VERSION

These arguments employ circular reasoning. They are also contrary to the record evidence. That the petition did not establish support of domestic producers or workers accounting for more than 50 percent of the total production of the domestic like product is undisputed.  *See* Initiation Checklist at Attachment II at 6 ("The Petitions did not establish the support of domestic producers accounting for more than 50 percent of the total production of the domestic like product").  In these circumstances, the statute mandates that Commerce shall: "poll the industry or rely on other information in order to determine if there is support for the petition as required."  19 U.S.C. § 1673a(c)(4)(D)(i).  Commerce's implementing regulations provide that "production levels may be established by reference to alternative data" but only if such data are "*indicative of production levels*."  *See* 19 C.F.R. § 351.203(e)(1) (emphasis added).  Therefore, the statute *requires* that Commerce poll the industry unless Commerce can "rely on other information" that is "indicative of production levels," as confirmed by Commerce's regulations, to determine industry support.

Defendant-Intervenors acknowledge that "the statute's focus is on *actual domestic production*," but then assert that "is what Commerce considered."  Defendant-Intervenors Br. at 25 (emphasis added).  This is wrong. Commerce itself confirmed it relied on what it called "*estimated* production."  Defendant Br. at 9.  The estimated production data were derived from a hodgepodge of both outdated data and data from an anomalous market period that were not "indicative of production levels" of the domestic industry as constituted at the time of the filing of the petition; therefore, Commerce was required to poll the industry.  19 C.F.R. § 351.203(e)(1); 19 U.S.C. § 1673a(c)(4)(D)(i).

## 2. Commerce erred in determining that "exceptional circumstances" did not exist

Contrary to arguments of Defendant and Defendant-Intervenors, the record confirms "exceptional circumstances" existed that justified extending the deadline to initiate the

investigation. Defendant Br. at 22; *see also* Defendant-Intervenors Br. at 14 ("exceptional circumstances … did not arise here").   Commerce's refusal to extend the time to review the record and delay its determination of adequacy by 20 days in order to poll the industry, as allowed under 19 U.S.C. § 1673a(c)(1)(B), was contrary to the evidence before it.   As in past cases where the petition did not clearly establish industry support, Commerce should have extended the deadline by 20 days and polled the domestic industry pursuant to 19 U.S.C. § 1673a(c)(1)(B).   *See* Tenaris Initial Br. at 42-44 (citing nine past Commerce cases in which it polled the industry).

The market conditions underlying the data on which Commerce based its determination were unprecedented in the history of the OCTG industry.   By the time of the filing of the petition, in October 2021, the supply and demand market conditions that drive production levels were unrecognizable compared to those of 2020.   Record evidence relating to (1) collapse in demand for oil and gas, due in part to the COVID-19 pandemic, coupled with global oversupply, which led to negative oil prices in 2020; the (2) historic prices of HRC, which led to a slowdown in welded OCTG production; and (3) OCTG production facility closures, demonstrates that these factors combined to make 2020 an unrepresentative year for the OCTG market and an inappropriate basis for Commerce to determine industry support for a petition filed in October 2021.

In this context, the largest U.S. producer challenged whether the petition had the requisite level of U.S. industry support on its face and requested that Commerce poll the industry. Defendant-Intervenors question whether Tenaris USA is indeed the "largest" U.S. OCTG producer.   Defendant-Intervenors Br. at 5.   Tenaris USA's statements in the underlying investigation that it is "the largest U.S. producer of OCTG" were made based on Tenaris' industry knowledge and supported by the extensive record evidence related to the more than $10 billion investment in its U.S. OCTG production base since 2006.   *See, e.g.*, Tenaris' October 15, 2021

**NON-CONFIDENTIAL VERSION**

Comments at 1, 11-13.  Notably, Tenaris USA's position in the U.S. market was not challenged by Petitioners in the underlying proceeding, and there is no information on the record suggesting that Tenaris is not the largest domestic OCTG producer.

Defendant-Intervenors contend that "Commerce undeniably considered the information provided by Tenaris," but "simply found Tenaris' information and argument unconvincing." Defendant-Intervenors Br. at 26 (citing Initiation Checklist at Attachment II at 9-21).  Commerce *did not address* any of the underlying factors that rendered 2020 anomalous in any detail.  It merely acknowledged that Tenaris had argued that "2020 data are anomalous" and that Commerce "see{s} no reason to depart from our longstanding practice of measuring production over the most recently completed calendar year for purposes of determining industry support."  *See* Initiation Checklist at Attachment II at 9, 16.  Commerce's decision not to poll the industry, given the record evidence, including opposition of the largest domestic OCTG producer, reflects a failure by Commerce to consider record evidence which, on its face, provided significant support for an alternative conclusion, rendering its affirmative industry support finding unsupported by substantial evidence. *See Allegheny Ludlum Corp.*, 112 F. Supp. 2d at 1165; *see also Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)) (holding that "a determination based on inadequate reasoning or conjecture cannot survive the 'substantial evidence' standard of review").

Defendant-Intervenors argue that the Court's decision in *Pokarna Engineered Stone Ltd. v. United States* supports Commerce's decision to *not* poll the industry.  Defendant-Intervenors Br. at 27.  They are wrong.  The critical difference is that, unlike *Pokarna*, in this case, industry support was *not apparent* within the petition "on its face."  *See Pokarna Engineered Stone Ltd. v.*

*United States*, 547 F. Supp. 3d 1300 (Ct. Int'l Trade 2021).  Due to the unquestionably "exceptional circumstances," Commerce was required to poll the industry.  *See* Tenaris Initial Br. at 36, 42-44.[2]

### 3.   Commerce abused its discretion in refusing to poll the industry to collect actual production data

Defendant contends there were no "exceptional circumstances" to "warrant extending the period of time to determine industry support."  Defendant Br. at 22.  Defendant-Intervenors go further, arguing that because "Commerce's determination of domestic industry support for the Petitions was based on substantial evidence and reasonable," and "given existing Commerce practice and factual support for a conclusion that over 50 percent of the domestic industry supported the petitions here, *it would have been an abuse of discretion for Commerce to poll the industry.*"  Defendant-Intervenors Br. at 29 (emphasis added).  The combination of issues, including a petition that lacked sufficient support on its face, concerns raised by the largest U.S. OCTG producer, 2020 as an anomalous period, an outdated 2018-2019 adjustment, the potential double-counting concern, and the fact that, even with the "other information" relied upon by Commerce, Petitioners were [                                        ], compelled Commerce to poll the industry because the level of industry support was unclear.  Its failure to do so here is a departure from prior cases where the record is unclear and represents an abuse of discretion.

A reviewing court invalidates agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This Court has found

---

[2] Defendant-Intervenors also challenge Plaintiffs' reference to previous cases in which Commerce found "compelling argument" that measuring production data from a period other than the most recently completed calendar year was more appropriate.  Defendant-Intervenors Br. at 28; Tenaris Initial Br. at 38-39.  These examples, although largely focused on agricultural products, are relevant here because Commerce determined that using an alternative time period "more accurately reflects the production" of that product.  Tenaris Initial Br. at 38-39 (citing *Sugar From Mexico: Initiation of Antidumping Duty Investigation*, 79 Fed. Reg. 22,795 (Apr. 24, 2014)).

abuse of discretion where "the agency offers insufficient reasons for treating similar situations differently." *Jiangsu Jiasheng Photovoltaic Tech. v. United States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (quoting *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)); *see also Clearon Corp. v. United States*, 38 Int'l Trade Rep. (BNA) 1960 (Ct. Int'l Trade 2016) (repeating the "well-established" standard that "agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently").  Plaintiffs cited numerous cases in which Commerce extended the initiation deadline by 20 days and polled the domestic industry pursuant to 19 U.S.C. § 1673a(c)(1)(B).  Tenaris Initial Br. at 36, 42-44.  In those cases, because industry support was unclear, Commerce followed its normal practice to poll the domestic industry.  On the same basis, Commerce should have polled here.

The CAFC also has found that an abuse of discretion occurs when Commerce's decision "represents an unreasonable judgment in weighing relevant factors."  *See Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted).  This Court also has held that Commerce acted in "an arbitrary and capricious manner if 'it entirely failed to consider an important aspect of the problem.'"  *Shandong Dongfang Bayley Wood Co. v. United States*, 375 F. Supp. 3d 1339, 1344 (Ct. Int'l Trade 2019).  As discussed above, and despite Defendant-Intervenors' claims, Commerce *failed to address any of the underlying factors* that rendered 2020 anomalous in any detail.  *See, e.g.*, Initiation Checklist at Attachment II at 9, 16.  Based on Commerce's cursory and dismissive treatment of evidence related to 2020 market conditions, it clearly "failed to consider an important aspect of the problem."  *Id.*  Commerce also failed to address the flaws with the 2018-2019 adjustment ratio and the potential double-counting distortion. *Id.* at 14, 17.

NON-CONFIDENTIAL VERSION

Defendant-Intervenors argue that the precedent established by *Consol. Bearings Co.* and other cases is "inapposite." They claim that, in this case, Commerce's determination "was based on substantial evidence and reasonable." Defendant-Intervenors Br. at 29. Defendant-Intervenors again miss the point. Commerce's determination to rely on other information was *not* based on substantial evidence. The "other information" on which Commerce relied did not remedy the concern with using data from 2020 as a basis to determine industry support, and Commerce failed to justify its reasoning to not poll the industry.

Commerce must either poll the industry *or* rely on "other information" that is indicative of actual production levels if the petition does not establish support of domestic producers accounting for more than 50 percent of the total production of the domestic like product. 19 U.S.C. § 1673a(c)(4)(D); 19 C.F.R. § 351.203(e)(1). However, the discretion to decline to poll is not unbounded and can be abused. Because the 2020 production data were estimated, from an anomalous period, as adjusted by the 2018-2019 ratio, they were *not* indicative of production levels at the time of the filing of the petition, Commerce should not have relied on them as "other information" in this case.

**C.   Contrary to Defendant-Intervenors' Arguments, if the Petition Lacked Industry Support, Commerce Could Not Treat the Investigation as "Self-Initiated"**

Defendant-Intervenors argue that, if the Court finds that petitions were not filed "by or on behalf of the industry" as required by the statute at 19 U.S.C. § 1673a(c)(4)(A), the Court should not nullify the investigation and revoke the AD Order. Defendant-Invervenors Br. at 29. Rather, Defendant-Invervenors claim that the validity of the investigations could be retroactively justified under Commerce's "authority to initiate an antidumping investigation *sua sponte*" under 19 U.S.C. § 1673a(a)(1). *Id.* This argument has no legal basis.

**NON-CONFIDENTIAL VERSION**

The statute clearly establishes that Commerce may initiate an investigation based on petition only if that petition has the requisite level of industry support. 19 U.S.C. § 1673a(c)(4)(A). Commerce erred in determining that the petition was filed "by or on behalf of the industry." Therefore, there was no legal basis for initiating the investigation or for the resulting AD Order.

The cases cited by Defendant-Intevenors are unavailing and based on the statutory provision that predate the Uruguay Round Agreements Act ("URAA"). At the time of the decision in *Citrosuco Paulista, S.A. v. United States* in 1988, "{n}either the statute nor Commerce's regulations require a petitioner to establish affirmatively that it has the support of a majority of a particular industry{.}" *Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075, 1085 (Ct. Int'l Trade 1988). The current statutory provision, as implemented in Commerce's regulations, requires that petitioners affirmatively demonstrate sufficient industry support for the petition. *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. REP. NO. 103-316, vol. 1, at 863 ("New sections 702(c)(1)(A)(ii) and 732(c)(1)(A)(ii) implement the requirement that Commerce determine that a petition is supported by the domestic industry before initiating an investigation. A petition is filed 'by or on behalf of the industry' if … {describing the thresholds set under 19 U.S.C. § 1673a(c)(4)(A)}"); *Final Rule*, 86 Fed. Reg. at 52,305 (establishing that "petitioners are responsible for establishing industry support of the petition").

Also unavailing is Defendant-Intervenors' reliance on *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660 (Fed. Cir. 1992). Defendant-Intervenors Br. at 30-31. The underlying investigation in *Suramerica* was also under the pre-URAA statute. *See Suramerica*, 966 F.2d at 666 ("There is nothing in sections 1671a(b) or 1673a(b) that answers the question {of 'what is the degree of industry support which must be shown'}. The statute cannot

be said to give a clear answer, since it gives no answer"). Moreover, the facts are also easily distinguishable because the level of industry support in that case was only called into question *after* Commerce initiated the investigation.

The CAFC understood that Commerce's interpretation of the statute allowed for a broad reading of the "on behalf of" language of the statute, *which was undefined* at the time of the decision. *Suramerica*, 966 F.2d at 667 (assuming that Commerce interpreted the "on behalf of" requirement as "merely a characterization of the nature of the petition, the satisfaction of which is left to Commerce's reasonable determination"). Only because the prior statutory wording was vague regarding the level of industry support required, the CAFC deferred to Commerce's "permissible reading." *Id*. The current statutory mandate is unequivocally clear and the requirement that petitions be filed "by or on behalf of the industry" is tied to precise thresholds. 19 U.S.C. § 1673a(c)(4)(A). Therefore, Defendant-Intervenors' reliance on these cases is inapposite, and their "form over substance" arguments fail for lack of legal, factual, and precedential support.

Even assuming, *arguendo*, that Commerce "could have" self-initiated an investigation of OCTG from Argentina under 19 U.S.C. § 1673a(a), it did not. *See* Defendant-Intervenors Br. at 31. There are clear and distinct statutory paths governing the initiation of investigations (1) by the administering authority and (2) by petition. *Compare* 19 U.S.C. § 1673a(a) *with* 19 U.S.C. § 1673a(b). There is nothing in the statute or regulations to suggest that Commerce may arbitrarily switch legal bases to initiate, and in any event, it did not self-initiate the underlying investigation. The statute imposes specific requirements to establish domestic industry support. 19 U.S.C. § 1673a(c)(4)(A). As discussed above, the petition failed to meet these requirements, and Commerce's initiation of the investigation on imports of OCTG from Argentina was therefore

NON-CONFIDENTIAL VERSION

inconsistent with the statutory requirements for determining the requisite level of industry support to permit the initiation of the investigation, the issuance of the Final Determination, and the imposition of the AD Order.

## III.   CONCLUSION

For the reasons set forth above and in Tenaris' Rule 56.2 Brief, Tenaris respectfully requests that the Court grant Tenaris' Rule 56.2 motion for judgment on the agency record.

Respectfully submitted,

/s/ Gregory J. Spak
Gregory J. Spak
Frank J. Schweitzer
Kristina Zissis
Matthew W. Solomon

WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

*Counsel to Tenaris Bay City, Inc., IPSCO Tubulars Inc., Maverick Tube Corporation, Tenaris Global Services (U.S.A.) Corporation, and Siderca S.A.I.C.*

October 20, 2023

CERTIFICATE OF COMPLIANCE

I, Gregory J. Spak, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers Procedures.  The word count for the Reply Brief of Tenaris Bay City, Inc., IPSCO Tubulars Inc., Maverick Tube Corporation, Tenaris Global Services (U.S.A.) Corporation, and Siderca S.A.I.C., as computed by the White & Case word processing system (Microsoft Word 2016), is 6,917.

_____/s/Gregory J. Spak_____
Gregory J. Spak