Slip Op. 24-31

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TENARIS BAY CITY, INC. ET AL.,** | |
| **Plaintiff,** | |
| v. | |
| **UNITED STATES,** | **Before: Claire R. Kelly, Judge** |
| **Defendant,** | **Court No. 22-00343** |
| and | **PUBLIC VERSION** |
| **UNITED STATES STEEL CORPORATION, ET AL.** | |
| **Defendant-Intervenors.** | |

## OPINION AND ORDER

[Granting in part and denying in part Plaintiffs' motion for judgment on the agency record.]

Dated: March 14, 2024

Gregory J. Spak, Frank J. Schweitzer, and Matthew W. Solomon, White & Case LLP, of Washington D.C., argued for plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris Global Services (U.S.A.) Inc., and Siderca S.A.I.C. On the brief were Kristina Zissis and Colin Alejandro Dilley.

Hardeep K. Josan, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States. On the brief were Patricia M. McCarthy, Director, Claudia Burke, Deputy Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel was Ian Andrew McInerney, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Court No. 22-00343                                                                Page 2
**PUBLIC VERSION**

<u>James E. Ransdell</u>, Cassidy Levy Kent (USA) LLP, of Washington D.C., argued for defendant-intervenor United States Steel Corporation.  On the brief were <u>Thomas M. Beline</u> and <u>Myles S. Getlan</u>.

<u>Christopher T. Cloutier</u> and <u>Saad Younus Chalchal</u>, Schagrin Associates, of Washington D.C., argued for defendant-intervenors Borusan Mannesmann Pipe U.S. Inc., PTC Liberty Tubulars LLC, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Welded Tube USA Inc.  On the brief were <u>Roger B. Schagrin</u>, and <u>Luke A. Meisner</u>.

Kelly, Judge:  Before the Court is Plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris Global Services (U.S.A.) Corporation, and Siderca S.A.I.C.'s ("Plaintiffs") motion for judgment on the agency record challenging the U.S. Department of Commerce's ("Commerce") final determination in its 2020-2021 less-than-fair-value investigation of oil country tubular goods ("OCTG") from Argentina.  Plaintiffs argue that: (1) Commerce's initiation of the antidumping duty ("AD") investigation and determination that the AD petition was filed "by or on behalf of the industry" is contrary to law and unsupported by substantial evidence; and (2) Commerce's decision not to poll the domestic industry and seek actual production data for the twelve months immediately preceding the filing of the petition to determine industry support is contrary to law, unsupported by substantial evidence, and an abuse of discretion.  For the following reasons, the Court sustains Commerce's determination in part, and remands in part for further explanation or reconsideration.

Court No. 22-00343                                                                   Page 3
**PUBLIC VERSION**

# BACKGROUND

Plaintiffs contest the initiation of the OCTG from Argentina AD investigation. [Pls.'] R. 56.2 Mot. J. Agency R. at 1, June 26, 2023, ECF No. 40 ("Pls. Mot."); Def.'s Resp. Opp'n [Pls. Mot.] at 1–2, Sept. 22, 2023, ECF No. 46 ("Def. Resp."). On October 6, 2021, Petitioners Borusan Mannesmann Pipe U.S. Inc, PTC Liberty Tubulars LLC, U.S. Steel Tubular Products, Inc., the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), and Welded Tube USA Inc. ("Petitioners") filed a petition for an imposition of AD and countervailing duties ("CVD") on OCTG from Argentina (AD), Mexico (AD), Korea (CVD), and Russia (AD/CVD). Pls. Mot. at 4; Def. Resp. at 2–3; see also Letters Schagrin Assoc. to Sec. Commerce Pertaining Borusan Mannesmann Pipe U.S., Inc. et al. Request for Admin Review, PDs 1–6, CDs 1–6, bar codes 4167998-01–06 (Oct. 5, 2021).[1] Pls. Mot. at 4;[2] Def. Resp. at 2–3. On October 7, 2021, Commerce issued its first questionnaire requesting additional information

---

[1] On February 22, 2023, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination. See ECF No. 35-4–5. Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices, and all references to such documents are preceded by "PD" or "CD" to denote public or confidential documents.

[2] Plaintiffs note that "[s]everal U.S. OCTG producers did not join in the filing of the petition," including Plaintiffs and their production companies—comprising the "largest U.S. producer of OCTG"—and [[
                                  ]]. Pls. Mot. at 4–5.

and for Petitioners to address a "methodological error with respect to the calculation

of total shipments for the U.S. industry."[3] Pls. Mot. at 5; Def. Resp. at 4.

On October 8, 2021, Plaintiffs submitted comments to Commerce alleging (1)

Petitioners misrepresented which production plants were represented by USW,

causing production figures to be improperly deducted from the industry support

calculation; (2) the industry support calculation was unreliable because it was based

on anomalous 2020 production data;[4] and (3) the Petitioner's reliance on shipment

data, instead of production data, was not in accordance with 19 U.S.C.

§ 1673a(c)(4)(A)(ii). Pls. Mot. at 6. Plaintiffs asked Commerce to reject the petition

or delay determination by twenty days to poll the industry and determine petition

support per 19 U.S.C. § 1673a(c)(1)(B). Id.

On October 12, 2021, Petitioners submitted a modified calculation of industry

support. Id. at 7; Def.-Ints.' Resp. Opp'n [Pls. Mot.] at 5, Sept. 22, 2023, ECF No. 44

("Def.-Ints. Resp.").[5]   On October 15, 2023, Plaintiffs submitted comments to

---

[3]  Defendant asserts that Petitioners established the universe of domestic OCTG producers, consisting of 20 producers including the petitioning companies, based on the International Trade Commission's ("ITC") most recent full sunset review and knowledge of the OCTG industry. Commerce's Initiation Checklist: Attach. II at 4, PD 26, CD 40, bar code 4176344-01 (Oct. 26, 2021) ("Attach. II"); Def. Resp. at 3.

[4]  Plaintiffs allege that the 2020 production data is anomalous because of the "oversupply of oil by [the Organization of the Petroleum Exporting Countries ('OPEC')], combined with the global COVID-19 pandemic." Pls. Mot. at 6.

[5]  Petitioners' revised industry support calculations had multiple bases, including:

(footnote continued)

Petitioners' modified industry support calculations, again identifying flaws and requesting Commerce to poll the industry and extend its determination by 20 days. Pls. Mot. at 7; Def. Resp. at 5.  On October 18, 2021, Petitioners responded to Plaintiffs' comments with a second revised industry support calculation.  Pls. Mot. at 7–8; Def. Resp. at 6.

On October 19, Commerce issued its second questionnaire to Petitioners, requesting information concerning domestic OCTG production facilities represented by USW.  Pls. Mot. at 8; Def. Resp. at 3.  On October 20, 2021, Plaintiffs commented on Petitioners' October 18 submission, reasserting the alleged flaws in industry support calculations as identified in Plaintiffs' previous comments and that the domestic industry should be polled.  Pls. Mot. at 8; Def. Resp. at 6.  Plaintiffs also argued "Petitioners bear the burden of demonstrating industry support for the petition," and that "Petitioner's strategy to cobble together the requisite support based on data for a group that also included processors and finishers of OCTG had implications for the accuracy of the industry support calculations."  Pls. Mot. at 8.

On October 21, 2021, Petitioners responded to Commerce's second questionnaire, and provided "updated declarations and information on domestic mills

---

Petitioners' own 2020 production data and domestic shipment data for 2020 [[
                              ]];  data from the ITC's 2020 final sunset review; adjustments based on ratios of domestic and export shipments using 2020 data; and estimates of non-petitioning companies' production.  Pls. Resp. at 7; Def.-Ints. Resp. at 5.

represented by USW" and revised calculations.[6]  Def.-Ints. Resp. at 8; Pls. Mot. at 9;

Def. Resp. at 4–5.  That same day, counsel for Plaintiffs met with Commerce to

"reiterate [Plaintiffs'] concerns stated in its three sets of comments, including that

Commerce poll the domestic industry to determine whether the petition has the

statutorily-required level of domestic industry support."  Pls. Mot. at 9; Def.-Ints.

Resp. at 8.  On October 22, 2021, Plaintiffs submitted a fourth set of comments,

contesting Petitioners' October 21, 2021, response to Commerce's second

questionnaire on the same grounds as Plaintiffs' previous objections.[7]  Pls. Mot. at

10; Def. Resp. at 7.

On October 26, 2021, Commerce initiated the AD investigation in accordance

with the 20-day statutory deadline provided by 19 U.S.C. § 1673a(c)(1)(A).  See Oil

Country Tubular Goods from Argentina, Mexico, and the Russian Federation:

Initiation of Less-Than-Fair-Value Investigations, 86 Fed. Reg. 60,205 (Dep't

Commerce Nov. 1, 2021) (initiation notice).  In its initiation checklist for the AD

investigation ("Initiation Checklist"), Commerce identified reliance upon "industry

support data contained in the [p]etitions" and explained that the petition satisfied

statutory requirements.  See Attach. II at 4; Def. Resp. at 7; Def.-Ints. Resp. at 9; see

---

[6]  Petitioners also provided "a [[

                                        ]]"  in the questionnaire response.  Def.-Ints.
Resp. at 8.
[7]  Defendant notes that Plaintiffs' fourth response was filed "16 days after the date of
the Petition and four days before Commerce's statutory deadline for determination
on initiation of the investigation."  Def. Resp. at 7.

also Pls. Mot. at 10.  Commerce accepted Petitioners' October 21 revised calculations and also conducted its own calculations with "a conservative, alternative methodology."[8]  Attach. II at 5; Def.-Ints. Resp. at 8.  Under both methodologies, Commerce found that the petition satisfied 19 U.S.C. § 1673a(c)(4)(A)(i) by exhibiting support from domestic producers or workers accounting for "at least 25 percent of the total production of the domestic like product."[9]  Attach. II at 6; Pls. Mot. at 10; Def. Resp. at 7.  However, neither methodology demonstrated that the domestic producers supporting the petition accounted for over 50 percent of the production of the domestic like product, as required by 19 U.S.C. § 1673a(c)(4)(A)(ii).  Attach II. at 6–7; Pls. Mot. at 10; Def.-Ints. Resp. at 9.

Consequently, Commerce chose to "rely on other information," and determined the petition was adequately supported by declarations from domestic producers

---

[8]  In the alternative calculation, Commerce
        calculated 2020 production estimates using the information available on
        the record on domestic shipments of OCTG for the entire industry in
        2020, as reported in [[                                    ]], and the publicly
        available information on U.S. producers' production and domestic
        shipments reported in the ITC's India et al OCTG 2020 Review.
Attach. II at 5; see also Def.-Ints. Resp. at 8.
[9]  Specifically, Commerce found that domestic industry support accounted for
[[            ]] percent of total production of the domestic like product in 2020 under
Petitioners' calculations, and [[            ]] percent under the alternative methodology.
Attach. II at 6.

contained in the agency record.[10]  Attach. II at 6–7; Def.-Ints. Resp. at 9; see Pls. Mot.

at 10–11.    Moreover, Commerce concluded that the October 1, 2020, through

September 30, 2021, period of investigation ("POI") was proper under 19 C.F.R.

§ 351.204, despite Plaintiffs' characterization that it was anomalous, as it

represented "the four most recently completed fiscal quarters since the month

preceding the filing date."  Def. Resp. at 8; Def.-Ints. Resp. at 10.  Commerce also

rejected Plaintiffs' concern that finishing operations were improperly included twice

when Petitioners calculated industry support, stating that "[t]he scope and domestic

like product of [AD] investigations includes OCTG 'whether finished . . . or

unfinished.'"  Attach. II at 14; Def.-Ints. Resp. at 9–10.

On May 11, 2022, Commerce published the preliminary results for the OCTG

AD investigation from Argentina, determining that OCTG is being, or likely to be,

sold in the United States at less than fair value.  See Oil Country Tubular Goods

---

[10]  Commerce used declarations of support from non-petitioning domestic producers
and [[                                                                    ]].  Attach. II at 6; Def.-
Ints. Resp. at 9.  Furthermore, Commerce noted that despite Plaintiffs' opposition to
the petition,

> [Plaintiff] has not provided any production data for Commerce to include
> in the industry support calculation.  Accordingly, because [[
>
>                                                                          ]]
> Petitions, [Commerce] find[s] that the supporters of the Petitions
> account for [[        ]] percent of the total U.S. production of those parties
> expressing an opinion on the Petitions for which we have production
> data.

Attach II. at 6–7 (footnotes omitted).

From Argentina, 87 Fed. Reg. 28,801 (Dep't Commerce May 11, 2022) (preliminary

determination of sales at less than fair value) and accompanying preliminary issues

and decision memorandum.  On September 29, 2022, Commerce published the final

results determining that OCTG from Argentina is being, or likely to be, sold in the

United States at less than fair value.   See Oil Country Tubular Goods From

Argentina, 87 Fed. Reg. 50,054 (Dep't Commerce Sept. 29, 2022) (final determination)

and accompanying issues and decision memorandum.

On January 13, 2023, Plaintiffs filed the instant action.  See generally Compl.,

Jan. 13, 2023, ECF No. 16.   On June 26, 2023, Plaintiffs moved the Court for

judgment on the agency record.  See generally Pls. Mot.  Defendant and Defendant-

Intervenors filed response briefs on September 22, 2023.  See generally Def. Resp.;

Def.-Ints. Resp.  Oral argument on the issues presented in Plaintiffs' motion was

heard by the Court on January 10, 2024.  See Dig. Audio File Re. Oral Arg. Proc.

[ECF No. 57] Held On Jan. 10, 2024, Jan. 11, 2023, ECF No. 58 ("Oral Arg.").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A of the Tariff Act of 1930,[11]

as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) (2018),[12] which

grants the Court authority to review actions contesting the final determination in an

---

[11]  Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2018 edition.
[12]  Further citations to Title 28 of the U.S. Code and Code of Federal Regulations are
to the 2018 edition.

**PUBLIC VERSION**

antidumping duty order.  The Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Plaintiffs argue Commerce's decisions to (1) rely on "other information" including "anomalous" data from the 2020 OCTG market period, rather than poll the domestic industry, and (2) assume that OCTG counted for finishing operations were not counted twice in the industry support calculations, were unsupported by substantial evidence, an abuse of discretion, and otherwise contrary to law.  Pls. Mot. at 14–45.  Defendant and Defendant-Intervenors argue that Commerce was not required to poll the industry, and that its industry support determination is reasonable, supported by substantial evidence, and in accordance with law.  Def. Resp. at 9–21; Def.-Ints. Resp. at 13–32.  Commerce's decision to rely on other information rather than poll the domestic industry is supported by substantial evidence.  However, Commerce must either reconsider or further explain its use of data from the 2020 market period, and specifically to ensure that finishing operations data were not double counted.

## I.    Polling the Industry

Plaintiffs claim that Commerce's reliance on other information rather than polling the domestic industry to calculate industry support based on the most recent twelve-month period prior to filing the AD petition is contrary to law and unsupported

by substantial evidence.  Pls. Mot. at 35.  Specifically, Plaintiffs argue (1) 19 U.S.C.

§ 1673a(c)(4)(D) mandates that Commerce poll the domestic industry if the petition

does not establish the statutory 50 percent level of support; (2) Commerce's failure to

poll the industry and request data "indicative of production levels" was unreasonable;

and (3) Commerce abused its discretion by failing to poll the domestic producers to

establish industry support.  Id. at 35–41.  Defendant and Defendant-intervenors

counter that Commerce's reliance on other information is in accordance with law and

supported by substantial evidence.  Def. Resp. at 20–22; Def.-Ints. Resp. at 25–29.

Because Commerce has statutory discretion to poll the industry or "rely on other

information" under 19 U.S.C. § 1673a(c)(4)(D) when calculating industry support of

an AD petition, the Court sustains Commerce's determination on this issue.

Initiation of an AD investigation pursuant to 19 U.S.C. § 1673a(a)(1) requires

Commerce to determine, based upon available information, "that a formal

investigation is warranted into the question of whether the elements necessary for

the imposition of [AD] under [the statute] exist."  19 U.S.C. § 1673a(a)(1).  An

interested party[13] may initiate an AD investigation by filing a petition on behalf of

---

[13] An "interested party," for the purposes of initiating an AD investigation by petition,
includes:

> (C) a manufacturer, producer, or wholesaler in the United States of a
> domestic like product,

(footnote continued)

**PUBLIC VERSION**

the industry requesting Commerce investigate possible dumping.    19 U.S.C.

§ 1673a(b)(1).  Before Commerce launches an investigation, it generally has 20 days

after the date a petition was filed to determine whether the petition: (1) alleges the

necessary elements for AD imposition and contains "information reasonably available

to the petitioner" after examining available sources and information to Commerce

and the strength of the evidence submitted by the petitioners; and (2) was filed "by

or on behalf of the industry." 19 U.S.C. § 1673a(c)(1)(A).

> Commerce considers a petition to be filed "by or on behalf of the industry" if
>
> (i) the domestic producers or workers who support the petition account for at least 25 percent of the total production of the domestic like product, and
>
> (ii) the domestic producers or workers who support the petition account for more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition.

---

> (D) a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States of a domestic like product,
> (E) a trade or business association a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States,
> (F) an association, a majority of whose members is composed of interested parties described in subparagraph (C), (D), or (E) with respect to a domestic like product[.]

19 U.S.C. § 1677(9)(C)–(F).

**PUBLIC VERSION**

19 U.S.C. § 1673a(c)(4)(A).[14]  Where the petition satisfies the 25 percent domestic

industry support requirement, but does not establish the latter 50 percent

requirement, the statute mandates that Commerce "shall[] poll the industry or rely

on other information in order to determine if there is support for the petition" before

proceeding with formal initiation of the AD investigation.[15]    19 U.S.C.

§ 1673a(c)(4)(D)(i).  In such a case, and if warranted by "exceptional circumstances"

at its discretion,[16] Commerce can extend the 20-day initial determination timeline for

a maximum of 40 days.  19 U.S.C. § 1673a(c)(4)(D).  When determining industry

support for an AD petition, Commerce is instructed to "normally" measure

---

[14] In Commerce's determination, it (1) "shall disregard the position of domestic producers who oppose the petition," if they are related to foreign producers, unless they can show their interests "would be adversely affected by the imposition of an antidumping duty order;" and (2) "may disregard the position of domestic producers of a domestic like product who are importers of the subject merchandise." 19 U.S.C. § 1673a(c)(4)(B).

[15] If Commerce decides to poll the industry, consisting of a large number of producers, Commerce can "determine industry support for the petition by using any statistically valid sampling method[.]"  19 U.S.C. § 1673a(c)(4)(D)(ii).

[16] The legislative history of the 19 U.S.C. § 1673a expounds upon Congress' grant of discretion to Commerce to extend the deadline under exceptional circumstances.  See Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 835 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4193–94 ("SAA").  The SAA notes that "exceptional circumstances may arise where the petition provides insufficient information on support, the domestic industry is fragmented, or there is a large number of producers in the industry." Id. at 4193.  Congress drafted the exception despite its recognition that "in the vast majority of cases, the determination of industry support will be made within the initial [20]-day period."  Id.  Nonetheless, Congress instructs that "Commerce will use this extension authority only in exceptional circumstances where the industry support issue cannot be decided in [20] days, and the initiation determination will be extended only for the additional time necessary to make a determination regarding industry support."  Id.

production, based on either value or volume, "over a twelve-month period, as specified by the Secretary." 19 C.F.R. § 351.203(e)(1). However, if an interested party demonstrates the unavailability of production data for the specified period, then Commerce may establish production levels "by reference to alternative data that [Commerce] determines to be indicative of production levels." Id.

Here, Commerce's decision not to poll the industry and instead rely on other information to determine industry support for the AD petition is in accordance with law and within its discretion. It is undisputed that both Petitioners' calculations and Commerce's alternative methodology satisfied the 25 percent industry support requirement of Section 1673a(c)(4)(A)(i) but failed to demonstrate over 50 percent support for the petition required under Section 1673a(c)(4)(A)(ii). See Attach. II at 6; Pls. Mot. at 10–11; Def. Resp. at 7–8; Def.-Ints. Resp. at 9. Thus, Section 1673a(c)(4)(D) guides Commerce's course of action for how to proceed with the AD investigation.

As Commerce explains, it conformed with its statutory directive under 19 U.S.C. § 1673a(c)(4)(D) by choosing to "rely on other information" as specifically provided by Section 1673a(c)(4)(D)(i). See Attach. II at 6, 19; Def. Resp. at 21. Congress gave Commerce the choice for how to proceed when faced with a petition that does not meet the requirements of 19 U.S.C. § 1673a(c)(4)(A)(ii), in that it can "poll the industry or rely on other information" to evaluate whether industry support

**PUBLIC VERSION**

for the petition exists.  19 U.S.C. § 1673a(c)(4)(D)(i).[17]  Commerce chose one of the

avenues expressly provided for by statute.

 Tenaris avers Commerce was required to establish industry support by using

"actual production data for the most recent twelve months prior to the filing of the

petition" rather than shipment data provided by Petitioners.  See Pls. Mot. at 35.

Commerce evaluates industry support of a petition to satisfy 19 U.S.C.

§ 1673a(c)(4)(A) and (c)(4)(D), it "normally will measure production over a twelve-

month period," as specified by Commerce, based on value or volume.  19 C.F.R.

§ 351.203(e)(1).[18]  However, Commerce may establish production levels by reference

to an alternative data period that Commerce finds "indicative of production levels" if

a party to the proceeding establishes the unavailability of production data for the

relevant period.  Id.

---

[17]  The statute's use of the conjunction "or" indicates introduction of a choice or alternative.  See Or, The Britannica Dictionary, https://www.britannica.com/diction ary/or (last visited Feb. 27, 2024) ("1 – used to introduce another choice or possibility"); Or, Oxford English Dictionary, https://www.oed.com/search/dictionary/ ?scope=Entries&q=or (last visited Feb. 27, 2024) ("used to coordinate two (or more) sentence elements between which there is an alternative).

[18]  Although the statute is silent as to the precise point in time Commerce must use to calculate industry support, see 19 U.S.C. § 1673a(c)(4)(A)(ii); 19 C.F.R. § 351.203(e)(1), Commerce's past practice is to use the most recently completed calendar year prior to filing of the petition. See Attach. II at 16; see also 19 C.F.R. § 351.204(b)(1) ("In an antidumping investigation, [Commerce] normally will examine merchandise sold during the four most recently completed fiscal quarters . . . as of the month preceding the month in which the petition was filed").

Here, Petitioners submitted their own production data, as well as declarations of support from non-petitioning producers.  <u>See</u> Attach. II at 4, 15.  Commerce recognized that such production data did not account for the entire domestic industry and that a fully populated data set for 2020 was unavailable.  <u>See</u> <u>id.</u> at 10, 15; Def.-Ints. Resp. at 29.  That Commerce did not use the most recent preceding twelve-month period to the date the petition was filed does not render Commerce's decision unreasonable.  Rather, consistent with 19 C.F.R. § 351.203(e)(1), Commerce resorted to an alternative data which included 2018 and 2019 shipment data as well as incomplete production data from 2020 to approximate production levels for the purpose of industry support calculations for the petition.  <u>See</u> Attach. II at 14–15 (citing 19 C.F.R. § 351.203(e)(1)); Def. Resp. at 12–13.  Commerce considered Petitioners' 2018 and 2019 shipment data[19] as well as its own estimates of the entire

---

[19]  Commerce explains Petitioners' estimated actual production calculation in the Initiation Checklist:

> To estimate the total 2020 production of the domestic like product for the entire domestic industry, the petitioners relied on shipment data for [[                                    ]] domestic OCTG shipments in 2020 as reported in [[
>
>      ]],  which the petitioners note is the recognized authority on the U.S. pipe and tube market, [[
>
>                                                        ]].  The petitioners contend that the [[                                    ]] data are the best available information regarding the volume of domestic OCTG shipments in 2020.  The petitioners further contend that they do not

(footnote continued)

industry's actual 2020 production data by relying on a similar, but more conservative

methodology."[20]  See Attach. II at 15; Def. Resp. at 12–13.  Moreover, Plaintiffs did

---

have access to 2020 industry production data and that industry shipment data are a reasonable proxy for production of OCTG, noting that the difference between their production levels and shipments [[

]].  The petitioners adjusted the domestic shipment data for 2020 reported in [[                                                                  ]] by the ratio of the petitioners' export shipments to total shipments in order to estimate total shipments (i.e., domestic and export shipments) in 2020.  The petitioners then deducted their own 2020 shipments from the estimated total shipments to derive non-petitioning companies' shipments in 2020.  To approximate non-petitioning companies' production from the available shipment data, the petitioners first calculated the historical ratio (2018-2019) of non-petitioning companies' production to shipments derived from data reported in the ITC's India et al OCTG 2020 Review and applied the resulting ratio to the estimated non-petitioning companies' shipments in 2020.  The petitioners then added this estimated production to their own 2020 production to estimate total production for the entire U.S. OCTG industry.  Using this methodology, the petitioners estimated total 2020 production of [[                ]] short tons for the entire domestic industry.

Attach. II at 4–5 (internal citations omitted).

[20]  Commerce explains its alternative, conservative methodology in the Initiation Checklist:

As a conservative, alternative methodology, we calculated 2020 production estimates using the information available on the record on domestic shipments of OCTG for the entire industry in 2020, as reported in [[                                              ]], and the publicly available information on U.S. producers' production and domestic shipments reported in the ITC's India et al OCTG 2020 Review.  Specifically, based on the available information on the record from the ITC publication and the [[                                        ]], we calculated the ratio of the U.S. industry's reported production to domestic shipments using data from

(footnote continued)

not offer their own production data to undermine Commerce's reliance on shipment data, nor did they challenge the authoritative basis from which the selected shipment data was derived.[21]  Attach. II at 15.  Thus, Commerce's decision to rely on other information provided by Petitioners and its selection of an alternative time-period in light of record evidence and reasonably available information in this case was in accordance with law.

Plaintiffs further allege Commerce was required to extend the initiation deadline of the investigation pursuant to 19 U.S.C. § 1673a(c)(1)(B).  Pls. Mot. at 41–42.  Plaintiffs assert that Commerce's past practice is to extend the investigation initiation deadline by 20 days "where the petition did not clearly establish industry support." Id. at 42.  As discussed, Commerce is required to poll the domestic industry or rely on other information when a filed petition fails to establish the 50 percent requirement of Section 1673a(c)(1)(A)(ii).   19 U.S.C. § 1673a(c)(1)(D)(i).   When operating under Section 1673a(c)(1)(D), Commerce may extend by "a maximum of 20 days" the deadline to determine whether the elements for AD imposition are present

---

the ITC publication and applied this ratio to the domestic shipment data from [[                                                     ]] to approximate total 2020 production for the U.S. OCTG industry.  Using this methodology, we estimated total 2020 production of [[                     ]] short tons for the entire domestic industry.

Attach. II at 5 (internal citations omitted).

[21]  As noted, both Petitioners and Commerce used shipment data from [[                                    ]] as a factor in estimating total domestic industry production for 2020.  Attach. II at 15; Def. Resp. at 12–13.

and whether the petition has sufficient industry support.  19 U.S.C. § 1673a(c)(1)(B).

However, Commerce must first be presented with "exceptional circumstances" before

determining if an extension is warranted.  See id.  Moreover, a decision to extend the

deadline is within Commerce's discretion.  See Pokarna Engineered Stone Ltd. v.

United States, 547 F. Supp. 3d 1300, 1310 (Ct. Int'l Trade 2021), aff'd, 56 F.4th 1345

(Fed. Cir. 2023) (citing the Supreme Court in United States v. Rodgers, 461 U.S. 677,

706 (1983), for the proposition that the word "may" implies discretion in the context

of Section 1673a(c)(1)(B)).

Here, Commerce's decision to leave the deadline unaltered is supported by

substantial evidence.  First, Commerce's decision not to extend the deadline was

reasonable in light of what it thought was sufficient evidence of industry support

based upon Petitioner's and its own calculations.  The SAA explains that "Commerce

will use [Section 1673a(c)(1)(B)] only in exceptional circumstances where the industry

support issue cannot be decided in twenty days."  SAA at 4193.  Commerce's

findings—on which it based its decision not to extend the deadline—and

determination that the petition was adequately supported were made without polling

the industry, thus eliminating the need to consider extending the deadline in the first

place.[22]  See Attach. II at 17 (noting that polling was unnecessary because Commerce

---

[22]  Plaintiffs claim that past agency practice supports their contention that Commerce

(footnote continued)

relied on other information to determine industry support).  The legislative history of

the statute supports Commerce's decision.  See SAA at 4192–94.

Second, it is within Commerce's discretion to extend the initiation deadline.

See 19 U.S.C. § 1673a(c)(1)(B) ("the administering authority may, in exceptional

circumstances, apply subparagraph [Section 1673a(c)(1)(A)] by substituting 'a

maximum of 40 days' for '20 days'").  Plaintiffs' efforts to characterize the factual

circumstances here as "exceptional"—and thus requiring an extension—fails to

undermine the reasonableness of Commerce's decision to the contrary.  Although

---

was required to extend the initiation deadline and poll the industry.  Pls. Mot. at 42.
However, the determination extensions that Plaintiffs cite are inapposite because the
underlying petition in each of those cases were determined by Commerce to be
insufficient for industry support, unlike Commerce's calculations here.  See, e.g.,
Utility Scale Wind Towers From India, Malaysia, and Spain, 85 Fed. Reg. 65,028
(Dep't Commerce Oct. 14, 2020) (notice of extension of time) ("Petitions have not
established that the domestic producers or workers accounting for more than 50
percent of total production support the Petitions"); Passenger Vehicle and Light
Truck Tires From Korea, Taiwan, Thailand, and Vietnam, 85 Fed. Reg. 32,013 (Dep't
Commerce May 28, 2020 (notice of extension of time) ("Because it is not clear from
the Petitions whether the industry support criteria have been met, Commerce has
determined it should extend the time period for determining whether to initiate
investigations in order to further examine the issue of industry support");
Polyethylene Terephthalate Sheet From the Republic of Korea, Mexico, and the
Sultanate of Oman, 84 Fed. Reg. 39,801 (Dep't Commerce Aug. 12, 2019) (notice of
extension of time) ("Because it is not clear from the Petitions whether the industry
support criteria have been met, Commerce has determined it should extend the time
for initiating investigations in order to further examine the issue of industry
support").

Plaintiffs invoke the phrase "exceptional circumstances,"[23] multiple times in a conclusory fashion, they fail to present persuasive evidence that any fact at issue actually fits into the purpose of the section. Rather, Plaintiffs merely highlight Commerce's disagreement with their characterization that the circumstances here were exceptional, effectively requesting the Court to reweigh the evidence. <u>See, e.g.</u> Pls. Mot. at 3 ("The record before Commerce demonstrated 'exceptional circumstances' warranting an extension . . ."); <u>id.</u> at 15 ("Given the 'exceptional circumstances' demonstrated by the record evidence . . ."); <u>id.</u> at 33 ("Commerce ignored the exceptional circumstances and [Plaintiffs'] repeated requests to extend the time for making a determination and poll the industry"). Plaintiffs' submissions that exceptional circumstances exist amount to factual disputes amongst the involved

---

[23] Plaintiffs also list a handful of bullet-pointed considerations in their motion that they believe constitutes "exceptional circumstances" warranting time extension under the statute, including:
- Petitioners' numerous revisions to the petition;
- Commerce's reliance on anomalous 2020 data from an unrepresentative OCTG market;
- Petitioners were below the 50 percent statutory level in the absence of using other information;
- Petitioners' treatment of OCTG processors/finishers in the calculation of domestic production and industry support;
- Repeated requests of Tenaris USA, the largest U.S. OCTG producer, to poll the industry; and
- Commerce's past practice to poll the domestic industry in similar situations in which industry support was unclear.

Pls. Mot. at 41. Plaintiffs fail to offer more analysis of how these considerations warrant an extension of time as "exceptional circumstances" contemplated by 19 U.S.C. § 1673a(c)(1)B).

parties. Without more, such allegations fail to demonstrate that Commerce's refusal

to extend the deadline was unreasonable requiring remand, as the Court will not re-

weigh the evidence in the record.[24]  See <u>Downhole Pipe & Equipment, L.P. v. United</u>

<u>States</u>, 776 F.3d 1369, 1376 (Fed. Cir. 2015).  Accordingly, Commerce's decision to

maintain its initial 20-day deadline for its initiation determination was reasonable.

Therefore, Commerce's decision to rely on other information to calculate industry

support for the purposes of initiating the OCTG AD investigation at issue is

supported by substantial evidence, in accordance with law, and thus sustained.

## II.    2020 OCTG Market Period Data

Plaintiffs challenge the sufficiency of the data Petitioners and Commerce relied

upon to calculate industry support for the initiation of the AD investigation.  Pls. Mot.

at 14; Reply In Supp'n [Pls. Mot.] at 3, Oct. 10, 2023, ECF No. 48 ("Pls. Reply").  In

addition to their previously discussed allegations that the data at issue presented

exceptional circumstances undermining its reliability, Plaintiffs also contend that

Commerce's and Petitioners' domestic production and industry support calculations

---

[24]  Plaintiffs argue that by rejecting their requests to poll the industry and consider record evidence allegedly showing "exceptional circumstances," Commerce failed to support its determination with substantial evidence because it did not address Plaintiffs' submissions supporting an alternative conclusion.  Pls. Mot. at 33–34; <u>id.</u>at 34, 36 (citing <u>Allegheny Ludlum Corp. v. United States</u>, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000)).  Plaintiffs' argument is unpersuasive.  As noted in the Initiation Checklist, Commerce acknowledged and addressed Plaintiffs submissions and ultimately found them unconvincing, <u>see</u> Attach. II at 9–21 (discussing and rejecting Plaintiffs' submissions), thus underscoring the Court's conclusion that Plaintiffs' claims of exceptional circumstances amount to factual disagreements.

**PUBLIC VERSION**

failed to ensure that finishing operations were not counted twice and thus potentially

distorting the data on which the initiation was based.  Pls. Mot. at 27–28; Pls. Reply

at 9–10.    Defendant and Defendant-Intervenors counter that initiation of the

investigation is supported by substantial evidence and that Plaintiffs' double

counting concerns are meritless.  Def. Resp. at 18, 23–24; Def.-Ints. Resp. at 14–15.

Because Commerce did not adequately address Plaintiffs' concerns and record

evidence that finishing operations were not counted twice, the Court remands this

issue for further explanation or reconsideration.

Commerce must determine domestic industry support by evaluating the total

"production of the domestic like product."  19 U.S.C. § 1673a(c)(4)(A)(ii).  Although

Commerce is afforded discretion in some respects to its choices in determining

industry support, such as its choice to poll the industry or extend the initiation

deadline as discussed above, its determination must nonetheless be supported by

substantial evidence.  See 19 U.S.C. § 1516a(b)(1)(B)(i).  To meet this threshold, the

Court must assess whether Commerce's action is reasonable in light of the entire

record, see Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir.

2006), and whatever "fairly detracts from its weight."  Universal Camera Corp. v.

NLRB, 340 U.S. 474, 488 (1951).  The reasonableness of Commerce's methodology

must factor considerations that run counter to its decision.  See Motor Vehicle Mfrs.

Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Substantial

evidence has been described as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." See DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Here, Commerce fails to address record evidence indicating that certain domestic companies both produce and finish OCTG, leading to the inference that some domestic pipe may have been double counted in the industry support calculations. Plaintiffs point to record evidence, specifically Petitioners Borusan Mannesmann and PTC Liberty Tubular's website, explaining that "it is unclear what portion . . . of operations involves actual pipe production, as opposed to finishing operations." See [Pls.'] Cmts. On Pets. Standing at 10, C.D. 12–18, P.D. 22–28 (Oct. 15, 2023) ("Pls. Oct. 15 Cmts.") (citing and explaining Borusan Mannesmann's and PTC Liberty Tubular's OCTG production information on their websites). Additionally, Plaintiffs point to record evidence that PTC Liberty Tubular was not identified as a producer in ITC's sunset review that was relied upon by both Petitioners and Commerce to calculate industry support. Id.; see Pls. Mot. at 27; Pls. Reply at 9–10; see also Attach. II at 4–6; Def. Resp. at 12–13. Based upon the sunset review, it would appear that PTC Liberty finished, but did not produce pipe, in which case it is unclear whether the pipe PTC Liberty finished had already been counted in the industry support calculations. Thus, the record evidence leads to the reasonable inference, argued by Plaintiffs to Commerce, that there may be pipe that was counted for the purposes of industry support when it was produced and again when it was

finished.  See Pls. Oct. 15 Cmts. at 10 (explaining that further processed production may have been "included when calculating [P]etitioners' production in the [industry support] calculation").[25]    Commerce may have reasons to reject this inference; however, it must acknowledge consideration of such evidence and explain why it nonetheless rejects the inference.

Commerce does not address this record evidence and the double counting inference at all, other than to claim it is meritless.  Commerce and Defendant only argue that finishing operations are included in the scope of the investigation.  See Attach. II at 14 (explaining "the scope and domestic like product of OCTG AD investigations includes OCTG whether finished or unfinished" gives Commerce "no reason to believe that these finishing operations should not be included as production of the domestic like product").[26]  Commerce's explanation suggests that it did not understand Plaintiffs' argument and therefore the Court must remand to allow Commerce opportunity to respond.    Defendant's post hoc rationalizations are

---

[25]   To illustrate their double counting concern, Plaintiffs offer the following hypothetical: "[b]lindly accepting data that treats processed pipe as 'production' runs the clear risk of double counting: one ton of green tube produced by an OCTG producer could very well have been counted as two tons when the 'production' was reported by a processor."  Pls. Mot. at 27; see also Pls. Reply at 10.  .

[26]  In its response brief, Defendant reiterates Commerce's conclusion, referencing a 2014 investigation to argue "the proposed scope definition covered both finished and unfinished OCTG, and that the [International Trade Commission] has consistently counted OCTG finishing operations as domestic production."  Def. Resp. at 18 (citing Certain [OCTG] From India, Korea, The Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam, USITC Pub. 4489, Invs. Nos. 701-TA-499-500, 731-TA-1215–1217-1219–1223 (Sept. 14, 2014)).

irrelevant, as it concedes Commerce did not address the record evidence that suggest

double counting was possible.  Oral Arg. at 53:00.

Defendant-Intervenors contend that Plaintiffs' concern was a "transparent

delaying tactic" having "no factual basis."  Def.-Ints. Resp. at 23.  Defendant-

Intervenors also argue that Petitioners certified their production data, in accordance

with governing regulations, "as accurate by both company officials and their counsel,"

allowing Commerce to rely on them "as it always does with the volumes of information

submitted pursuant to such certifications."  Id. at 23 (citing 19 C.F.R. §§ 351.303(g);[27]

207.3(a)).[28]  Defendant-Intervenors' assertion that Plaintiffs arguments were made

---

[27] The relevant portion of 19 C.F.R. § 351.303(g) reads as follows:

> (g) Certifications. Each submission containing factual information must
> include the following certification from the person identified in
> paragraph (g)(1) of this section and, in addition, if the person has legal
> counsel or another representative, the certification in paragraph (g)(2)
> of this section. The certifying party must maintain the original signed
> certification for a period of five years from the date of filing the
> submission to which the certification pertains. The original signed
> certification must be available for inspection by U.S. Department of
> Commerce officials. Copies of the certifications must be included in the
> submission filed at the Department.

19 C.F.R. § 351.303(g).

[28] The relevant portion of 19 C.F.R. § 207.3(a) reads as follows:

> (a) Certification.  Any person submitting factual information on behalf
> of the petitioner or any other interested party for inclusion in the record,
> and any person submitting a response to a Commission questionnaire,
> must certify that such information is accurate and complete to the best
> of the submitter's knowledge.

19 C.F.R. § 207.3(a).

**PUBLIC VERSION**

only to delay is conclusory.  Further, mere reference to the Petitioners' certifications fail to address the argument made by Plaintiff.

Commerce fails to respond to record evidence suggesting the possibility of double counting within the industry support calculations, and therefore the Court cannot conclude that Commerce's determination is supported by substantial evidence.  See Universal Camera Corp., 340 U.S. at 488 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight").  Accordingly, the Court remands determination on the double counting issue to Commerce for further explanation or reconsideration.

## CONCLUSION

For the foregoing reasons, the Court sustains Commerce's determination to rely on other information rather than poll the industry to calculate industry support for the AD investigation petition for OCTG from Argentina.  Commerce's determination that the data relied upon accurately reflected industry support, including whether finishing operations were counted twice, is remanded for further explanation or reconsideration.  In accordance with the foregoing, it is

**ORDERED** that the final results, see ECF No. 35-2, are remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the Court within 90 days of this date; and it is further

Court No. 22-00343                                                                    Page 28
**PUBLIC VERSION**

    **ORDERED** that the parties shall have 30 days to file comments on the remand

redetermination; and it is further

    **ORDERED** that the parties shall have 30 days to file their replies to the

comments on the remand redetermination; and it is further

    **ORDERED** that the parties shall file the joint appendix within 14 days after

the filing of replies to the comments on the remand redetermination; and it is further

    **ORDERED** that commerce shall file the administrative record within 14 days

of the date of filing its remand redetermination.


                                   /s/ Claire R. Kelly
                                   Claire R. Kelly, Judge

Dated:       March 14, 2024
               New York, New York