UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; and SIDERCA S.A.I.C., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | Court No. 22-00343 |
| Defendant, | ) ) | **PUBLIC VERSION** |
| and | ) ) | |
| UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; and WELDED TUBE, | ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

## <u>ORDER</u>

Upon consideration of the Department of Commerce's remand redetermination, plaintiffs' comments, defendant's response, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand redetermination is sustained in all respects.


Dated: _____, 2024            _____
       New York, New York                                    JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; and SIDERCA S.A.I.C., | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | Court No. 22-00343 |
| Defendant, | ) ) | **PUBLIC VERSION** |
| and | ) ) | |
| UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; and WELDED TUBE, | ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**DEFENDANT'S REPLY TO COMMENTS
ON THE REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:

IAN ANDREW McINERNEY
Senior Attorney
Office of the Chief Counsel
    for Trade Enforcement & Compliance
U.S. Department of Commerce

HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax:  (212) 264-1916
Email: hardeep.k.josan@usdoj.gov

August 26, 2024

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 2

ARGUMENT ................................................................................................................... 4

   I.   Commerce Complied With The Court's Remand Order ................................................. 5

   II.   Tenaris Did Not Exhaust Its Administrative Remedies ................................................ 8

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
    616 F.Supp.2d 1354 (Ct. Int'l Trade 2009) ..................................................... 11, 12

*JTEKT Corp. v. United States,*
    768 F.Supp.2d 1333 (Ct. Int'l Trade 2011) .............................................................. 12

*Pirelli Tyre Co., Ltd. v. United States,*
    638 F.Supp.3d 1361 (Ct. Int'l Trade 2023) ......................................................... 12, 13

*Rhone Poulenc, Inc. v. United States,*
    899 F.2d 1185 (Fed. Cir. 1990) ................................................................................ 12

*Tenaris Bay City, Inc. et al. v. United States,*
    693 F.Supp.3d 1314 (Ct. Int'l Trade 2024) .................................................... *passim*

*U.S. Steel Corp. v. United States,*
    348 F.Supp.3d 1248 (Ct. Int'l Trade 2018) .............................................................. 11

**Statutes**

19 U.S.C. § 1673a .......................................................................................................... 3

19 U.S.C. § 1673a(b)(1) ........................................................................................... 7, 8, 9

19 U.S.C. § 1673a(c)(1)(A) ........................................................................................ 9, 13

19 U.S.C. § 1673a(c)(1)(B) ........................................................................................ 9, 13

19 U.S.C. § 1673a(c)(4)(E) ................................................................................ 8, 9, 12, 13

**Other Authorities**

*Oil Country Tubular Goods from Argentina:  Preliminary Affirmative Determinations of Sales at Less Than Fair Value and Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures,* 87
    Fed. Reg. 28,801 (Dep't of Commerce May 11, 2022) ............................................ 3

*Oil Country Tubular Goods from Argentina,*
    87 Fed. Reg. 59,054 (Dep't of Commerce Sep. 29, 2022) .................................... 2, 3

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R. Doc. No. 103–316, vol. 1 at 863 (1994) (SAA) ................................................ 9

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| TENARIS BAY CITY, INC.; MAVERICK TUBE CORPORATION; IPSCO TUBULARS INC.; TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION; and SIDERCA S.A.I.C., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STATES STEEL CORPORATION; BORUSAN MANNESMANN PIPE U.S. INC.; PTC LIBERTY TUBULARS LLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO; and WELDED TUBE, <br><br> Defendant-Intervenors. | Court No. 22-00343 <br><br> **PUBLIC VERSION** |

**DEFENDANT'S REPLY TO COMMENTS
ON THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this reply to the comments filed by

Plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris

Global Services (U.S.A.) Corporation, and Siderca SAIC (collectively, Plaintiffs or Tenaris),

ECF No. 78 (Pl. Remand Comments), on the final remand redetermination issued by the

Department of Commerce (Commerce) pursuant to *Tenaris Bay City, Inc. et al. v. United States*,

693 F.Supp.3d 1314 (Ct. Int'l Trade 2024) (*Remand Order*), remanding to Commerce the Final

Determination in the investigation of oil country tubular goods (OCTG) from Argentina. *See Oil Country Tubular Goods from Argentina*, 87 Fed. Reg. 59,054 (Dep't of Commerce Sept. 29, 2022) (*Final Determination*) (P.R. 226) and accompanying Issues and Decision Memorandum (P.R. 220).

## **BACKGROUND**

On October 6, 2021, Commerce received an antidumping duty (AD) petition concerning imports of OCTG from Argentina, filed in proper form on behalf of the petitioners.[1] *See* Petitioners' Letter, "Petitions for the Imposition of Antidumping and Countervailing Duties," dated October 6, 2021 (the Petition) (C.R. 1 through 6, P.R. 1 through 6). On October 12 and 21, 2021, the petitioners provided supplemental information and clarifications, in response to Commerce's requests for additional information regarding the Petition. *See* Petitioners' Letters, "Response to General Issues Questionnaire," dated October 12, 2021 (First General Issues Supplement Response) (C.R. 10, P.R. 19); *see also* "Response to Second General Issues Questionnaire," dated October 21, 2021 (C.R. 23, P.R. 32). Also in October, Commerce received four submissions from Tenaris USA commenting on industry support.[2] *See* Tenaris USA's Letters, "Factual Errors in Petitions," dated October 8, 2021 (Tenaris USA Letter I) (C.R. 9, P.R. 15); "Comments on Petitioners' Standing," dated October 15, 2021 (Tenaris USA Letter II) (C.R. 12, P.R. 22); "Reply Comments on Petitioners' Standing," dated October 20, 2021 (Tenaris USA Letter III) (C.R. 22, P.R. 31); and Comments on Petitioners' Second General

---

[1] The petitioners are Borusan Mannesmann Pipe U.S., Inc. (Borusan U.S.), PTC Liberty Tubulars LLC (PTC Liberty), United States Steel Corporation, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Welded Tube USA, Inc. (collectively, the petitioners).

[2] Tenaris Bay City, Inc., IPSCO Tubulars Inc., Maverick Tube Corporation, Tenaris Global Services (U.S.A.) Corporation (collectively, Tenaris USA).

Issues Questionnaire Response," dated October 22, 2021 (Tenaris USA Letter IV) (C.R. 25, P.R. 35).  On October 18, 2021, the petitioners responded to Tenaris USA's comments on industry support.  *See* Rebuttal Comments on Standing (C.R. 19, P.R. 29).

On October 26, 2021, Commerce initiated the LTFV investigation on imports of OCTG from Argentina, finding that the Petition met the requirements of 19 U.S.C. § 1673a.  *See* Petitioners' Letter, "Response to Tenaris Submission Concerning Petitioners' Standing," dated October 18, 2021 (Petitioners' Response) (C.R. 19, P.R. 29).  On May 11, 2022, Commerce issued its preliminary determination that OCTG from Argentina is being, or is likely to be, sold in the United States at LTFV for the period of investigation, October 1, 2020, through September 30, 2021.  *See Oil Country Tubular Goods from Argentina: Preliminary Affirmative Determinations of Sales at Less Than Fair Value and Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 87 Fed. Reg. 28,801 (Dep't of Commerce May 11, 2022).  Commerce made no change, in this regard, for purposes of its Final Determination.  *See Final Determination*, 87 Fed. Reg. at 59,054.  Plaintiffs subsequently challenged the Final Determination, contesting Commerce's:  (1) determination that the Petition was filed "by or on behalf of the industry"; and (2) decision not to poll the domestic industry and seek actual production data for the 12 months immediately preceding the filing of the Petition to determine industry support.  *See Remand Order* at 2.

On March 14, 2024, the Court remanded the *Final Determination* for Commerce to further explain or reconsider its determination that the data relied upon accurately reflected industry support, including whether finishing operations were counted twice.  *Id.* at 3, 21, and 27.  On May 28, 2024, Commerce released its draft results of redetermination and provided interested parties the opportunity to comment.  *See* Draft Results of Redetermination Pursuant to

Court Remand (Remand P.R. 1) (Draft Remand).  On June 4, 2024, the petitioners and Tenaris submitted comments regarding the Draft Remand.  *See* Petitioners' Letter, "Comments on Draft Remand Redetermination," dated June 4, 2024 (Petitioners' Comments) (Remand P.R. 2); *see also* Tenaris's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 4, 2024 (Remand C.R. 1, Remand P.R. 3).  On June 7, 2024, Commerce rejected Tenaris's comments after determining that the submission contained untimely new factual information not previously contained on the record of the proceeding, while providing Tenaris with an opportunity to refile its comments after removing the references to the untimely new factual information.  *See* Petitioners' Letter, "Comments on Draft Remand Redetermination," dated June 4, 2024 (Petitioners' Comments) (Remand P.R. 2); *see also* Tenaris's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 4, 2024 (Remand C.R. 1, Remand P.R. 3).  On June 10, 2024, Tenaris resubmitted its comments redacting references containing new factual information.  *See* Tenaris's Letter, "Resubmission of Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 10, 2024 (Tenaris' Comments on Draft Remand) (Remand C.R. 2, Remand P.R. 6).

Commerce filed its Final Redetermination with the Court, ECF No. 74 (*Final Redetermination*), on June 26, 2024.  Tenaris filed its Remand Comments in opposition to Commerce's Final Redetermination on July 26, 2024.  ECF No. 78.

## **ARGUMENT**

The Court should sustain the Final Redetermination because Commerce complied with the *Remand Order* in all respects, and its determination is reasonable, supported by substantial evidence, and otherwise in accordance with law.

## I.    Commerce Complied With The Court's Remand Order

In the *Remand Order*, the Court held that "Commerce must either reconsider or further explain its use of data from the 2020 market period, and specifically to ensure that finishing operations data were not double counted." *Remand Order* at 10.  In particular, the Court found that Commerce failed "to address record evidence indicating that certain domestic companies both produce and finish OCTG, leading to the inference that some domestic pipe may have been double counted in the industry support calculations." *Id.* at 24 (referencing Borusan Mannesmann and PTC Liberty Tubular's (PTC Liberty) websites, and identification of producers on the ITC's sunset review).  As demonstrated below, Commerce fully complied with the *Remand Order*, and Tenaris's arguments to the contrary are without merit.

Commerce reconsidered the information on the record and further explained the "double counting" issue raised by Tenaris.  *Final Redetermination* at 14-17.  First, regarding Borusan Mannesmann's website, the "information demonstrates that Borusan U.S.'s Baytown, Texas facility further processes *imported* green tube from its Gemlik, Turkiye facility, and not domestically produced green tube from another U.S. producer." *Id.* at 16 (emphasis in original). Thus, Commerce reasonably concluded that "Borusan U.S.'s production appropriately reflects its U.S. mill operations as well as the heat treatment processing of its green tube imports from its Turkiye facility." *Id.*

Second, regarding PTC Liberty's website, the "record demonstrates that PTC Liberty is first and foremost a *producer* of OCTG; a producer that also has capabilities to process (or finish) OCTG." *Id.* at 15-16 (emphasis in original).  Accordingly, Commerce properly rejected the significance of PTC Liberty's processing capabilities "as information on the record indicates

5

that U.S. pipe mills are typically equipped with the facilities necessary to perform heat-treatment, end upsetting, threading, and coupling." *Id.* at 16.

Third, regarding PTC Liberty not being identified as a producer in the ITC's sunset review, Commerce explained that PTC Liberty was formerly known as Boomerang Tube and "was identified in the ITC's list as Boomerang Tube." *Id.* at 15. Thus, PTC Liberty Tubular was indeed identified as a U.S. producer of OCTG in the ITC's sunset review.

Plaintiffs first argue that "{Commerce} did not resolve the distortive effect identified by the Court." Pl. Remand Comments at 1. Plaintiffs' misstate the Court's holding. At no point in the Court's opinion did it hold that there was a distortive effect due to alleged "double counting." Rather, the Court stated that Commerce did not address certain record evidence, leading to an inference that there "may have" been "doubling count{ing}." *Remand Order* at 23-24. In the *Final Redetermination*, Commerce addressed this *potential* "double counting" argument and concluded that there was no evidence to suggest that finishing operations were counted twice. *See Final Redetermination* at 12-14.

Tenaris next complains that "Commerce incorrectly focuses its limited discussion on these two processors." Pl. Remand Comments at 12. Yet, Borusan and PTC Liberty are the only two petitioning companies Tenaris itself focused on to assert that some domestic pipe may have been double counted in the industry support calculation. Commerce is limited to the record before it, and because Tenaris USA only addressed these two companies, Commerce properly analyzed record evidence related to Borusan and PTC Liberty.

Tenaris also contends that Commerce failed to corroborate whether the shipment data are complete and include mill and processor shipments (including imported green tube that is heat treated in the United States). Pl. Remand Comments at 13-19. As support, Tenaris [ █████ ]



] *Id.* at 15.  Tenaris states that the [        ]

] .

*Id.*  Commerce reexamined the record with respect to this exhibit and found that [        ]

] *Final Redetermination* at 21.  Further, as Commerce

explained, the "petitioners [        ]

] *Id.*  Thus, Tenaris's claims regarding potential flaws in the underlying data in

the industry support calculation are unsubstantiated and without merit.

Additionally, while the Court has already sustained Commerce's decision to not poll the

domestic industry and did not remand this issue to Commerce, Tenaris still argues that

Commerce should have polled the domestic industry.  Pl. Remand Comments at 11.  As the

Court has already held, "Commerce's decision not to poll the industry and instead rely on other

information to determine industry support for the AD petition is in accordance with law and

within its discretion."  *Remand Order* at 14.

Finally, Commerce's reliance on 2020 production and shipment data, and certain limited

information from 2018-2019 to convert 2020 shipment data to production data was in accordance

with law.  The statute requires that the petition be "accompanied by information *reasonably*

*available* to the petitioner supporting those allegations."  19 U.S.C. § 1673a(b)(1) (emphasis

added).  2020 was the most recently completed calendar year preceding initiation, and

Commerce appropriately relied on production data from that time period, which reasonably

overlapped with its period of investigation.  Likewise, the 2018-2019 conversion ratio data were

the "most recently available industry-wide production and shipment data" available on the record

to make necessary data conversions.  *See* Initiation Checklist, Attachment II.  The mere fact that

data relate to the past does not mean that they cannot be used to establish industry support,

particularly given that there was nothing on the record to call into question the accuracy or

adequacy of the evidence provided by the petitioners.  Indeed, despite its objections to every

time period on the record, Tenaris USA never proposed an alternative time period that

Commerce could examine to calculate industry support.  Moreover, information provided by

Tenaris USA in its pre-initiation comments indicate that similar market conditions, under which

Tenaris USA challenges the 2020 data, were also present in much of 2021.  *See* Tenaris USA

Letter II at 14-16.  Thus, despite its contentions, Tenaris USA's statements in its submissions

failed to demonstrate whether using a more recent time period would have been more

appropriate.  If anything, as Commerce explained when initiating the investigation, it appears

that the ultimate basis for Tenaris USA's argument against relying on 2020 industry data is for

Commerce to adjust the time period analyzed for industry support to move the needle in such a

way so that the Petition no longer has the requisite level of industry support.  *See* Initiation

Checklist, Attachment II at 17-18.

## II.    <u>Tenaris Did Not Exhaust Its Administrative Remedies</u>

During the remand proceeding, Tenaris again asserted new arguments that it failed to

make before the agency when commenting on the industry support as required by 19 U.S.C. §

1673a(c)(4)(E), or in the Rule 56.2 briefs.  Specifically, Tenaris's arguments with respect to "undercounting," heat treatment and threading operations, and the source underlying the industry support calculations were never raised before Commerce until the remand proceeding.  As such, Tenaris failed to exhaust its administrative remedies, and the Court should not allow Tenaris to benefit from this failure.

Pursuant to 19 U.S.C. § 1673a(b)(1), the starting point for initiation of an investigation is a petition "accompanied by information reasonably available to the petitioner" alleging the elements necessary for the imposition of an antidumping duty.  Additionally, Commerce, apart from in exceptional circumstances, has 20 days to decide whether it is going to initiate an investigation.  *See* 19 U.S.C. § 1673a(c)(1)(A) and (B).  During these 20 days, parties are required to submit all their arguments and information related to industry support.  *See* 19 U.S.C. § 1673a(c)(4)(E) ("{Prior to its initiation determination, any interested party} may submit comments or information on the issue of industry support.  After {making its initiation decision}, the determination regarding industry support shall not be reconsidered.").  The Statement of Administrative Action repeats this principle, "{a}rguments regarding industry support should not be made to either Commerce or the Commission following initiation."  Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1 at 863 (1994) (SAA).  In addition to the double counting argument that the Court remanded to Commerce, Tenaris failed to raise the "undercounting," the heat treatment/threading, and the industry source arguments prior to initiation, as it was required to do.

While Tenaris tries to obfuscate how much its arguments have changed over time, its submissions to Commerce prior to initiation demonstrate that Tenaris USA *only* cared about the inclusion of "mere finishing operations."

> The industry support calculations submitted by Petitioners suffer from an additional potential flaw. The Petitioners' calculations of their own production and/or shipments might include data that pertain to mere finishing operations of Petitioners rather than the production of OCTG. As an initial matter, Commerce should confirm whether the data submitted by Petitioners *include only their own OCTG production, or include both OCTG production and finishing operations.* Based on publicly-available information, two of the petitioner companies – Borusmann Mannesmann Pipe U.S., Inc. ("Borusan U.S.") and PTC Liberty Tubulars LLC ("PTC") – *appear to have potentially significant finishing operations relative to their actual OCTG production.* This deficiency further justifies a decision by Commerce to poll the parties and require that any production data they provide do not include OCTG *that they merely finish rather than produce.* According to Borusan U.S.'s website, *it is unclear what portion of Borusan U.S.'s operations involves actual pipe production, as opposed to finishing operations for green tube.* Likewise, PTC provides information that *indicates its operations include finishing operations.*

Tenaris USA Letter II at 9-10 (emphasis added). Tenaris's arguments concerned the amount a company's operations included finishing as opposed to producing OCTG. Similarly, in Tenaris USA Letter III, Tenaris USA again describes its concerns with the inclusion of "mere finishing operations:"

> Thus, the Petitioners' calculations of their own production and/or shipments *might include data that pertain to mere finishing operations of Petitioners rather than the production of OCTG.* Notably, Petitioners do not rebut Tenaris USA's argument that two of the petitioner companies – Borusmann Mannesmann Pipe U.S., Inc. ("Borusan U.S.") and PTC Liberty Tubulars LLC ("PTC") – *appear to have potentially significant finishing relative to their actual OCTG production.* Nor do Petitioners address the fact PTC was not recognized as a U.S. producer in the recent ITC sunset review in 2020, or offer any explanation as to changes that may justify the company being considered part of the industry after the sunset period. This is particularly odd given that sunset review proceedings

> are by their very nature forward looking in their outlook.
> Moreover, *Petitioners do not address how the issue of
> finishing pertains to Commerce's determination of industry
> support*, and do not cite to any Commerce precedent to
> explain their unclear position. *The relationship of pipe
> formation and pipe finishing has implications for any
> assessment of a domestic OCTG industry given that the
> percentage of green pipe and plain end imports of OCTG
> into the United States will vary year to year and may
> constitute the majority of imports in any given year*.

Tenaris USA Letter III at 8 (emphasis added). Again, Tenaris USA only took issue with the

inclusion of "mere finishing operations" in the industry support calculation. Although Tenaris

argued that the percentage of imports of green pipe and plain end OCTG vary year to year and

that this has implications for any assessment of a domestic OCTG industry, but it failed to

elucidate what these implications would be and how this impacts the industry support

calculation. Finally, in Tenaris USA Letter IV, Tenaris USA highlighted several of its "core

concerns" with the petitioners' industry support calculation: "Petitioners' attempt to reach the 50

percent industry support threshold by cobbling together smaller producers and

processors/finishers of OCTG products." Tenaris USA Letter IV at 4-5.

Tenaris argues that Commerce was "provided with clear notice" of potential distortions in

the industry support calculation with respect to these issues. Pl. Remand Comments at 23. Yet,

even now, Tenaris has been unable to figure out the exact problem with the industry support

calculations. For instance, Tenaris argues that the "potential for improperly counting—whether

double-counting or *undercounting*—is one of several distortions . . . ." Pl. Remand Comments at

4 (emphasis added). Tenaris's new theory of "undercounting" does not satisfy the requirement

that parties exhaust their administrative remedies, and Tenaris USA certainly never raised this

argument prior to initiation. *See, e.g.*, *U.S. Steel Corp. v. United States*, 348 F.Supp.3d 1248,

1259 (Ct. Int'l Trade 2018) ("Failure to raise and adequately develop a legal claim results in

11

waiver.") (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 616 F.Supp.2d 1354, 1367 (Ct. Int'l Trade 2009); *see also Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *see also JTEKT Corp. v. United States*, 768 F.Supp.2d 1333, 1354 (Ct. Int'l Trade 2011)).

Tenaris USA also never made specific arguments with respect to heat treatment and threading operations that it did during the remand and now before the Court. *See* Pl. Remand Comments at 10-12. The only instance where the words "heat" and "thread" appear in Tenaris USA's pre-initiation submissions are in Tenaris USA Letter II, where, as mentioned above, Tenaris USA is quoting from Borusan Mannesmann's and PTC Liberty Tubular's respective websites. *See* Tenaris USA Letter II at 10, n.26, n.27. In addition to not raising these arguments before Commerce, Tenaris failed to raise them in its Rule 56.2 brief. Despite failing to raise any arguments about heat treatment or threading operations before Commerce initiated the investigation, Tenaris' raises new arguments, such as "for further processing to be considered part of the U.S. industry production, the pipe must be heat treated . . . ." Pl. Remand Comments at 6. Pursuant to 19 U.S.C. § 1673a(c)(4)(E), Tenaris USA was required to raise these arguments and provide evidence for these arguments prior to Commerce's initiation determination, yet it failed to do so. Further, because Tenaris failed to raise these arguments its brief to the Court, Tenaris has waived these arguments. *See Pirelli Tyre Co., Ltd. v. United States*, 638 F.Supp.3d 1361, 1370-71 (Ct. Int'l Trade 2023) ("Pirelli failed to raise its argument regarding Commerce's authority to impose a China-wide entity rate in its opening brief and did not meaningfully assert the argument in its reply, the argument is waived."). The Court should reject these arguments and Tenaris's attempts to make new arguments that it was required to make prior to initiation.

Tenaris has also raised, for the first time, objections to the industry source that the petitioners' provided in the petition.  *See* Pl. Remand Comments at 15-17, 22.  While Tenaris USA has consistently argued that data from 2020 are anomalous, Tenaris USA never made any specific arguments with respect to issues it had with the actual content of industry source.  *See generally* Tenaris USA Letter I through IV.  Only now has Tenaris begun to develop arguments attacking aspects of the industry source.  *See* Pl. Remand Comments at 8, 15-17, 22.  Because Tenaris failed to raise these arguments in its briefs before the Court, Tenaris has also waived these arguments.  *See Pirelli*, 638 F.Supp.3d at 1370-71.

As has been demonstrated above, the statute requires Commerce, apart from exceptional circumstances, to decide whether it is going to initiate an investigation within 20 days from the filing of the petition.  *See* 19 U.S.C. § 1673a(c)(1)(A) and (B).  During these 20 days, parties are required to submit all their arguments and information related to industry support, which Commerce considers in its decision of whether sufficient industry support exists.  *See* 19 U.S.C. § 1673a(c)(4)(E).  Tenaris improperly invites the Court to disregard the statute by advancing new arguments that were not presented during the 20-day period for submitting such arguments and evidence.  These new arguments are not logical extensions of Tenaris's existing arguments. Specifically, Tenaris's initial arguments to Commerce focused on whether further processed OCTG should be included in the scope of the domestic like product, not whether heat treatment and threading were sufficient types of further processing to be included in the scope of the domestic like product.  Additionally, Tenaris did not raise objections about the industry source itself, it only argued that the data in the industry source covering 2020 were anomalous.  Nor did Tenaris argue that the same industry source "undercounted" any of the data it was trying to represent.  While Tenaris has attempted to reframe the arguments it made before Commerce,

13

Commerce responded to these arguments at the pre-initiation stage in the manner in which they were presented as demonstrated by what is actually on the record.  Accordingly, the Court should reject Tenaris' arguments regarding "undercounting," heat treatment/threading, and the source underlying the industry support calculation.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's Remand Redetermination and enter judgment for the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td><u>/s/Claudia Burke</u><br>CLAUDIA BURKE<br>Deputy Director</td></tr>
<tr><td>OF COUNSEL:</td><td></td></tr>
<tr><td></td><td><u>/s/Hardeep K. Josan</u><br>HARDEEP K. JOSAN</td></tr>
<tr><td>IAN ANDREW McINERNEY</td><td>Trial Attorney</td></tr>
<tr><td>Senior Attorney</td><td>Commercial Litigation Branch</td></tr>
<tr><td>Office of the Chief Counsel</td><td>Civil Division</td></tr>
<tr><td>   for Trade Enforcement & Compliance</td><td>U.S. Department of Justice</td></tr>
<tr><td>U.S. Department of Commerce</td><td>26 Federal Plaza, Suite 346</td></tr>
<tr><td></td><td>New York, New York 10278</td></tr>
<tr><td></td><td>Tel.: (212) 264-9245</td></tr>
<tr><td></td><td>Fax:  (212) 264-1916</td></tr>
<tr><td>August 26, 2024</td><td>Email: hardeep.k.josan@usdoj.gov</td></tr>
</table>

14

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this

Court, that this brief contains 3,830 words, excluding the table of contents, table of authorities,

any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's

signature, as calculated by the word processing system used to prepare this brief (Microsoft

Word).

<u> s/ Hardeep K. Josan</u>
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division