Slip Op. 24-133

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **TENARIS BAY CITY, INC. ET AL.,** | |
| **Plaintiffs,** | |
| v. | |
| **UNITED STATES,** | **Before: Claire R. Kelly, Judge** |
| **Defendant,** | **Court No. 22-00343**<br>**PUBLIC VERSION** |
| **and** | |
| **UNITED STATES STEEL**<br>**CORPORATION, ET AL.** | |
| **Defendant-Intervenors.** | |

## <u>OPINION</u>

[Sustaining the Department of Commerce's Remand Redetermination.]

Dated: December 2, 2024

<u>Gregory J. Spak</u>, <u>Frank J. Schweitzer</u>, <u>Kristina Zissis</u>, <u>Matthew W. Solomon</u>, and <u>Colin Alejandro Dilley</u>, White & Case LLP, of Washington D.C., argued for plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris Global Services (U.S.A.) Inc., and Siderca S.A.I.C.

<u>Hardeep K. Josan</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, argued for defendant United States. Of counsel was Ian <u>Andrew McInerney</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce.

<u>Thomas M. Beline</u>, <u>Myles S. Getlan</u>, and <u>James E. Ransdell</u>, <u>Cassidy Levy Kent</u> (USA) LLP, of Washington D.C., argued for defendant-intervenor United States Steel Corporation.

Court No. 22-00343                                                                Page 2
**PUBLIC VERSION**

<u>Roger B. Schagrin</u>, <u>Alessandra A. Palazzolo</u>, <u>Christopher T. Cloutier</u>, <u>Elizabeth J.</u>
<u>Drake</u>, <u>Jeffrey D. Gerrish</u>, <u>Justin M. Neuman</u>, <u>Luke A. Meisner</u>, <u>Michelle R. Avrutin</u>,
<u>Nicholas J. Birch</u>, <u>Saad Y. Chalchal</u>, and <u>William A. Fennell</u>, Schagrin Associates, of
Washington D.C., argued for defendant-intervenors Borusan Mannesmann Pipe U.S.
Inc., PTC Liberty Tubulars LLC, United States Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers International Union,
AFL-CIO, CLC, and Welded Tube.

Kelly, Judge:  Before the Court is the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), Jun. 26, 2024, ECF No. 74, in the antidumping ("AD") and countervailing duties ("CVD") investigation of Oil Country Tubular Goods ("OCTG") from Argentina (AD), Mexico (AD), Korea (CVD), and Russia (AD/CVD), made in accordance with the mandate of this Court in <u>Tenaris Bay City, Inc. v. United States</u>, 693 F.Supp.3d 1314 (Ct. Int'l Trade 2024) ("<u>Tenaris I</u>").  For the following reasons, Commerce's remand redetermination is sustained.

## BACKGROUND

The Court presumes familiarity with the facts as set forth in <u>Tenaris I</u> and will only recount those pertinent to the instant matter.  <u>See generally</u> <u>Tenaris I</u>, 693 F.Supp.3d 1314.  On October 6, 2021, Petitioners Borusan Mannesmann Pipe U.S. Inc, PTC Liberty Tubulars LLC, U.S. Steel Tubular Products, Inc., the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), and Welded Tube USA Inc. ("Petitioners") filed a petition for an imposition of antidumping and countervailing duties on OCTG from Argentina (AD), Mexico (AD), Korea (CVD), and Russia

(AD/CVD).   <u>See generally</u> Petitions for the Imposition of Antidumping and Countervailing Duties: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia ("Petitioner's Letter"), PDs 1–6, CDs 1–6 bar codes 4168004-01–06 (Oct. 6, 2021).[1]

On October 26, 2021, Commerce, after seeking and receiving additional information and comments from petitioners, initiated the antidumping investigation in accordance with the 20-day statutory deadline provided by 19 U.S.C. § 1673a(c)(1)(A).  <u>See generally</u> Letter from White & Case LLP to Sec. Commerce, re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Factual Errors in Petitions ("Factual Error Cmts."), PD 15, CD 9, bar code 4169951–01 (Oct. 8, 2021); <u>see also</u> Letter Cassidy Levy Kent & Schagrin Assoc. to Sec. Commerce & Sec. Int'l Trade Comm. Pertaining Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Response to General Issues Questionnaire ("Resp. to General Questionnaire"), PD 19, CD 10 bar code 4170756–01 (Oct. 12, 2021); <u>see also</u> Letter from White & Case LLP to Sec. Commerce, re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Standing ("Cmts. re Petitioners' Standing"), PDs 22–28, CDs 12–18, bar codes 4172063-01-05 (Oct. 15, 2021); <u>see also</u> Petitioners' Letter,

---

[1] Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices, and all references to such documents are preceded by "PD" or "RPD" and "CD" or "RCD" to denote public or confidential documents.

"Response to Tenaris Submission Concerning Petitioners' Standing" ("Rebuttal Cmts. on Standing), PD 29, CD 19, bar code 4172946–01 (Oct. 18, 2021); <u>see also</u> Letter from White & Case LLP to Sec. Commerce, re: Oil Country Tubular Goods from Mexico: Reply Comments on Petitioners' Standing ("Reply Cmts. on Standing"), PD 31, CD 22, bar code 4173963–01 (Oct. 20, 2021); <u>see also</u> Letter from White & Case LLP to Sec. Commerce, re: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia: Comments on Petitioners' Second General Issues Questionnaire Response ("Cmts. re Petitioners' Second GIQ Resp."), PD 35, CD 25, bar code 4174685–01 (Oct. 22, 2021); <u>see also</u> Commerce Initiation Checklist ("Initiation Checklist"), PD 40, CD 26, bar code 4176347–01 (Oct. 26, 2021); <u>see also</u> <u>Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation: Initiation of Less-Than-Fair-Value Investigations</u> ("Initiation Notice"), 86 Fed. Reg. 60,205 (Dep't Commerce Nov. 1, 2021).

In its Initiation Checklist for the antidumping investigation, Commerce identified reliance upon "industry support data contained in the [p]etitions" and explained that the petitions satisfied statutory requirements. <u>See</u> Initiation Checklist at 4. Commerce accepted Petitioners' October 21 revised calculations and also conducted its own calculations with "a conservative, alternative methodology." <u>Id.</u> at 5. Under both methodologies, Commerce found that the petitions satisfied the requirements of 19 U.S.C. § 1673a(c)(4)(A)(i) by exhibiting support from domestic producers or workers accounting for "at least 25 percent of the total production of the

domestic like product." Id. at 6. However, neither methodology demonstrated that the domestic producers supporting the petition accounted for over 50 percent of the production of the domestic like product, as required by 19 U.S.C. § 1673a(c)(4)(A)(ii). Id. at 6–7.

Consequently, Commerce chose to "rely on other information," and determined the petitions were adequately supported by declarations from domestic producers contained on the agency record.[2] Initiation Checklist, Attach II. at 6–7. Additionally, Commerce concluded that the October 1, 2020, through September 30, 2021, period of investigation ("POI") was proper under 19 C.F.R. § 351.204, despite Plaintiffs' characterization that it was anomalous, as it represented "the four most recently completed fiscal quarters since the month preceding the filing date." Initiation Notice at 60,205. Commerce also rejected Plaintiffs' concern that finishing operations were

---

[2] Commerce used declarations of support from non-petitioning domestic producers and [[                                                                    ]]. Initiation Checklist, Attach. II at 6; Def. Int. Resp. at 9. Furthermore,

> Commerce noted that despite Plaintiffs' opposition to the petition, [Plaintiff] has not provided any production data for Commerce to include in the industry support calculation. Accordingly, because [[
>
>                                                                       ]]
> Petitions, [Commerce] find[s] that the supporters of the Petitions account for [[      ]] percent of the total U.S. production of those parties expressing an opinion on the Petitions for which we have production data.

Initiation Checklist, Attach II. at 6–7 (footnotes omitted).

Court No. 22-00343                                                                                      Page 6
**PUBLIC VERSION**

improperly included twice when Petitioners calculated industry support, stating that

"[t]he scope and domestic like product of [AD] investigations includes OCTG 'whether

finished . . . or unfinished.'"  Initiation Checklist, Attach. II at 14.

On May 11, 2022, Commerce issued its preliminary determination, finding that

during the POI, OCTG from Argentina is being, or likely to be, sold in the United

States at less than fair value ("LTFV").  See Oil Country Tubular Goods from

Argentina: Preliminary Affirmative Determinations of Sales at Less Than Fair Value

and Critical Circumstances, Postponement of Final Determination, and Extension of

Provisional Measures ("Prelim. Determination"), 87 Fed. Reg. 28,801 (Dep't

Commerce May 11, 2022); see also Decision Memorandum for the Preliminary

Affirmative Determinations of Sales at less Than Fair Value and Critical

Circumstances in the Investigation of Oil Country Tubular Goods from Argentina

("Prelim. Issues and Decision Memo."), 87 ITADOC 28,801 (Dept. Commerce May 11,

2022).  On September 29, 2022, Commerce published its final results and, mirroring

its previous conclusions, determined that OCTG from Argentina is being, or likely to

be, sold in the United States for LTFV.  See Oil Country Tubular Goods from

Argentina: Final Affirmative Determination of Sales at Less Than Fair Value and

Final Negative Determination of Critical Circumstances ("Final Determination"), 87

Fed Reg. 59,054–01 (Dep't Commerce Sept. 29, 2022); see also Issues and Decision

Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value

Investigation of Oil Country Tubular Goods from Argentina, and Final Negative

Determination of Critical Circumstances ("Final Issues and Decision Memo."), 87 ITADOC 59,054 (Dep't Commerce Sept. 29, 2022).

On January 13, 2023, Plaintiffs initiated this action. See generally Compl., Jan. 13, 2023, ECF No. 16. On June 26, 2023, Plaintiffs moved for judgment on the agency record. See generally Pls. Mot. Judgment Agency Record ("Pl. 56.2 Mot."), Jun. 26, 2023, ECF No. 40. Plaintiffs specifically challenged Commerce's determination that the petitions were filed "by or on behalf of the industry," and its decision not to poll the domestic industry and seek actual production data for the 12 months immediately preceding the filing of the petitions to determine industry support. Id. at 14–41.

On March 14, 2024, the Court sustained Commerce's determination to rely on "other information" rather than poll the industry to calculate industry support for the antidumping investigation petition for OCTG from Argentina and remanded the Final Determination for Commerce to further explain or reconsider its determination that the data relied upon accurately reflected industry support, including whether finishing operations were counted twice. Tenaris I, 693 F.Supp.3d at 1328. On May 28, 2024, Commerce released its draft remand redetermination. See generally Draft Results of Redetermination Pursuant to Court Remand, Tenaris Bay City, Inc. et al. v. United States, Court No. 22-00343, Slip Op. 24-31 (CIT March 14, 2024) ("Draft Remand Results"), RPD 1, bar code 4565870–01 (May 28, 2024). On June 4, 2024, in response to the Draft Remand Results, both Plaintiffs and Defendant-Intervenors

submitted comments.  <u>See</u> Tenaris Comments on Draft Remand Determination, RPD 3, RCD 1, bar code 4571563–01 (Jun 4, 2024); <u>see also</u> Defendant-Intervenors Comments on Draft Remand Redetermination, RPD 2, bar code 4570681–01 (Jun. 4, 2024).  On June 7, 2024, Commerce rejected Plaintiffs' submission because it contained untimely new factual information.  <u>See</u> Letter from Yang Jin Chun to White & Case LLP, re: Slip Op. 24-31, Oil Country Tubular Goods from Argentina: Rejection of Tenaris's Comments on Draft Results of Redetermination, RPDs 4-5, bar code 4573606–01 (Jun. 7, 2024).  On June 10, 2024, Plaintiffs resubmitted their comments, redacting references to the new factual information.  <u>See</u> Tenaris Resubmission of Comments on Draft Remand Determination, RPD 6, RCD 2, bar code 4575101–01 (Jun. 10, 2024).

On June 26, 2024, Commerce filed its Remand Results.  <u>See generally</u> Remand Results.  On July 26, 2024, Plaintiffs filed their comments on the Remand Results. <u>See generally</u> Comments of Plaintiffs Tenaris Bay City, Inc., Maverick Tube Corporation, Ipsco Tubulars Inc., Tenaris Global Services (U.S.A.), Corporation, And Siderca S.A.I.C. on Commerce's Final Remand Determination ("Pl. Cmts."), Jul. 26, 2024, ECF No. 78.  On August 26, 2024, Defendant and Defendant-Intervenors filed their replies to Plaintiff's comments.  <u>See generally</u> Defendant's Reply to Comments on the Remand Redetermination ("Def. Reply Cmts."), Aug. 26, 2024, ECF No. 82; <u>see also</u> Defendant-Intervenors' Reply to Plaintiffs' Comments on the Remand Redetermination ("Def. Int. Reply Cmts."), Aug. 26, 2024, ECF No. 80.  On Sept. 16,

2024, the Court granted Plaintiffs' unopposed motion for oral argument.  See Order

Granting Unopposed Motion for Oral Argument, Sept. 16, 2024, ECF No. 87.  On

October 22, 2024, oral argument was held.  See Oral Argument, Oct. 22, 2024, ECF

No. 91.

**JURISDICTION AND STANDARD OF REVIEW**

Pursuant to Section 516A of the Tariff Act of 1930,[3] as amended, 19 U.S.C.

§ 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) (2018),[4] this Court is granted the authority

to review actions contesting the final determination in an antidumping duty order.

The Court will uphold Commerce's determination unless it is "unsupported by

substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  Huaiyin Foreign

Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court determines

whether substantial evidence exists by considering the record as a whole, including

any evidence that supports or fairly detracts from the substantiality of the evidence.

Huaiyin Foreign Trade Corp. (30), 322 F.3d at 1374 (quoting Atl. Sugar, Ltd. v.

United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  The possibility that two

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2018 edition.
[4] Further citations to Title 28 of the U.S. Code and Code of Federal Regulations are
to the 2018 edition.

inconsistent conclusions may be drawn from the evidence does not prevent an agency's determination from being supported by substantial evidence. <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966) (citing <u>N.L.R.B. v. Nevada Consol. Copper Corp.</u>, 316 U.S. 105, 106 (1942)).

## DISCUSSION

### I.    **Exhaustion of Administrative Remedies**

Defendant argues that Plaintiffs failed to raise arguments with respect to (1) potential undercounting in Commerce's calculations, (2) whether Commerce's calculations include only processing that involves heat treatment as opposed to threading, and (3) the completeness of the industry source data ("Industry Source")[5] used by Commerce. Def. Reply Cmts. at 8–9, 13–14 (citing 19 U.S.C. § 1673a(c)(4)(E)). Defendant-Intervenors echo Defendant's position. Def. Int. Cmts. at 25, n.4. Plaintiffs claim they have exhausted arguments that Commerce's determination (1) allows for undercounting in its calculations, Pl. Cmts at 4, (2) fails to confirm that the production by processors reflects only processing that involves heat treatment as opposed to threading, <u>id.</u> at 10–11, and (3) fails to confirm that Industry Source data is complete. <u>Id.</u> at 18. Specifically, they state they have "repeatedly argued that the comingling of production and processing data had implications for the accuracy of the industry support calculation and therefore requested that Commerce solicit

---

[5] The Industry Source that Commerce used in its determination is the [[                        ]].

disaggregated data." Id. at 23.    Likewise, they point out that they argued to

Commerce that the relationship between formation and finishing "has implications

for any assessment" of support. Id. at 4 (quoting Reply Cmts. on Standing at 8).

Generally, parties must exhaust their administrative remedies to obtain

judicial review.    McKart v. United States, 395 U.S. 185, 193 (1969) (internal

quotations omitted) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41,

50–51 (1938)).  Requiring exhaustion acknowledges agency expertise, allows agencies

to correct mistakes, and promotes efficiency.  Woodford v. Ngo, 548 U.S. 81, 89 (2006).

A plaintiff must show that it exhausted its administrative remedies, or that it

qualifies for an exception to the exhaustion doctrine.  Consol. Bearings Co. v. United

States, 348 F.3d 997, 1003 (Fed. Cir. 2003) (citing 28 U.S.C. § 2637(d)).[6]

Plaintiffs are correct that they questioned the completeness of the Industry

Source data before Commerce; however, both Commerce and this Court addressed

that challenge.  Commerce acknowledged the imperfect nature of the Industry Source

data in its Initiation Checklist when it explained "neither the statute nor regulations

prevent the petitioners from estimating the production of the non-petitioning

companies."  See Initiation Checklist at 16.  It also noted no party, including

Plaintiffs, had "offered any alternative sources for production estimates that would,

---

[6] The time in which a party must exhaust its arguments with respect to industry
support calculations, is the 20-day window which Congress has provided for
Commerce to make its industry support determination.  19 U.S.C. § 1673a(c)(4)(E).

in their view, be more reliable." Id. Consequently, Commerce determined that the

use of an estimate did not require it to poll the industry. Id. Commerce's explanation

is reasonable on this the record, as it is the parties' burden to populate the record.

See BMW of N. Am. LLC v. United States, 926 F.3d 1291, 1295 (Fed. Cir. 2019);

Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386–87 (Fed. Cir.

2014); QVD Food Co., Ltd. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011).

Commerce was not required to use perfect data so long as it explains why its choice

was reasonable on the record, which it did. See e.g. PT Pindo Deli Pulp and Paper

Mills v. United States, 825 F.Supp.2d 1310, 1327–28 (Ct. Int'l Trade 2012) Finally,

Tenaris I sustained Commerce's methodology and use of the Industry Source data as

a reasonable estimate. Tenaris I, 693 F.Supp.3d at 1324.

Although Commerce and this Court have already addressed Plaintiffs'

challenge to the completeness of the Industry Source data, Plaintiffs now spin out

two new arguments based upon their prior complaint. Specifically, Plaintiffs theorize

that the incompleteness of the Industry Source data led to undercounting and

improper comingling of OCTG producers and processors, distorting Commerce's

calculations. Pl. Cmts at 4, 10. Plaintiffs did not raise these arguments within the

20-day comment period provided by 19 U.S.C. § 1673a(c)(1)(A). See generally Factual

Error Cmts.; Cmts. re Petitioners' Standing; Reply Cmts. on Standing; Cmts. re

Petitioners' Second GIQ Resp. Plaintiffs did, however, complain to Commerce of the

"implications" of including both producers and processors in the industry support

calculation,[7] specifically arguing that Borusan U.S. ("Borusan") and PTC Liberty ("PTC") "appear to have potentially significant finishing relative to their actual OCTG production."  Reply Cmts. on Standing at 8.  Plaintiffs ask too much of the word "implications."  At best this argument would have raised to Commerce the challenge that either (1) processors should not be included in the calculation, or (2) the inclusion of processors might lead to double counting, both of which Commerce addressed in its Remand Results.  Remand Results at 10–11.  Plaintiffs cannot now rely on the word "implications" to fashion more specific arguments about potential undercounting or distinctions between processing that involves heat treatment as opposed to threading operations. Plaintiffs' specific arguments of undercounting, and comingling of the producers and processors, are not exhausted, and therefore not reviewable by this Court.

## II.    Industry Support Calculation

Plaintiffs argue that Commerce fails to comply with this Court's remand order by failing to prove the accuracy of the industry support calculation and failing to address whether domestically produced OCTG may have been double counted.  Pl. Cmts. at 9, 13–23.  Plaintiffs contend, because the Industry Source did not disaggregate its data, Commerce cannot confirm the accuracy of its industry support

---

[7] Reply Cmts. on Standing at 8 ("The relationship of pipe formation and pipe finishing has implications for any assessment of a domestic OCTG industry given that the percentage of green pipe and plain end imports of OCTG into the United States will vary year to year and may constitute the majority of imports in any given year").

calculations.  Id. at 11–14.  Defendant asserts that Commerce complied with the Court's remand order and its determination is reasonable on this record.  Def. Reply Cmts. at 4–8.  Defendant-Intervenors concur with Defendant's assertions.  Def. Int. Reply Cmts. at 10–17.  For the reasons that follow, Commerce's industry support calculation is sustained.

An interested party[8] may petition Commerce to commence an antidumping investigation on behalf of the industry.  19 U.S.C. § 1673a(b)(1).  Commerce generally has 20 days to determine whether, inter alia, the petition was filed "by or on behalf of the industry."[9]  19 U.S.C. § 1673a(c)(1)(A).

> Commerce considers a petition to be filed "by or on behalf of the industry" if

---

[8] An "interested party," for the purposes of initiating an antidumping investigation by petition, includes:

> (C) a manufacturer, producer, or wholesaler in the United States of a domestic like product,
> (D) a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States of a domestic like product,
> (E) a trade or business association a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States,
> (F) an association, a majority of whose members is composed of interested parties described in subparagraph (C), (D), or (E) with respect to a domestic like product[.]

19 U.S.C. § 1677(9)(C)–(F).

[9] If warranted by "exceptional circumstances" at its discretion, Commerce can extend the 20-day initial determination timeline for a maximum of 40 days.  See 19 U.S.C. § 1673a(c)(1)(B); 19 U.S.C. § 1673a(c)(4)(D).  Here, Commerce did not extend the 20-day initial timeline, publishing its Initiation Checklist on October 26, 2021, 20 days after the Petitions were filed.  See Initiation Checklist.

> (i) the domestic producers or workers who support the petition account for at least 25 percent of the total production of the domestic like product, and

> (ii) the domestic producers or workers who support the petition account for more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition.

19 U.S.C. § 1673a(c)(4)(A).[10]  Where the petition satisfies the 25 percent domestic industry support requirement, but does not establish the latter 50 percent requirement, Commerce "shall[] poll the industry or rely on other information in order to determine if there is support for the petition" before proceeding with formal initiation of the antidumping investigation.[11]  19 U.S.C. § 1673a(c)(4)(D)(i).

A petition to initiate an antidumping proceeding must be accompanied by information "reasonably available" to the petitioner.  19 U.S.C. §1673a(b)(1).  When determining industry support for an antidumping petition, Commerce will "normally" measure production, based on either value or volume, "over a twelve-month period, as specified by the Secretary."  19 C.F.R. § 351.203(e)(1).  However, if an interested party demonstrates the unavailability of production data for the specified period,

---

[10] Commerce (1) "shall disregard the position of domestic producers who oppose the petition," if they are related to foreign producers, unless they can show their interests "would be adversely affected by the imposition of an antidumping duty order;" and (2) "may disregard the position of domestic producers of a domestic like product who are importers of the subject merchandise."  19 U.S.C. § 1673a(c)(4)(B).

[11] If Commerce decides to poll the industry it can "determine industry support for the petition by using any statistically valid sampling method[.]"  19 U.S.C. § 1673a(c)(4)(D)(ii).

then Commerce may establish production levels "by reference to alternative data that [Commerce] determines to be indicative of production levels." Id.

In Tenaris I, this Court sustained Commerce's decision to rely on other information to calculate industry support for the purposes of initiating the OCTG antidumping investigation at issue but ordered Commerce to "either reconsider or further explain its use of data from the 2020 market period, and specifically to ensure that finishing operations data were not double counted." Tenaris I, 693 F.Supp.3d at 1320. In particular, the Court took note of record evidence that might suggest finished pipe may have been counted twice in Commerce's calculations. Id. at 1326 (noting "certain domestic companies both produce and finish OCTG, leading to the inference that some domestic pipe may have been double counted in the industry support calculations"). Thus, the Court remanded for Commerce to reconsider or further explain its determination that the record "accurately reflected industry support, including whether finishing operations were counted twice." Id. at 1328.

On remand, Commerce considered the record evidence, including that which the Court noted might detract from Commerce's prior conclusion. Remand Results at 14–17. Commerce continues to use the Industry Source data to calculate industry support. Id. at 11. In reviewing the Industry Source data, Commerce continues to include both OCTG producers as well as processors who heat treat green tube as part

of the domestic industry.[12]  Id. at 12–13.  Commerce reconsidered its determination,

particularly in light of record evidence regarding Petitioners Borusan and PTC.  Id.

at 14.  It examined the record evidence submitted by Plaintiffs, showing screenshots

of both Borusan and PTC's websites, determining that PTC is "first and foremost" a

producer of OCTG with processing capabilities, and Borusan primarily manufactures

OCTG casing while processing imported tubing from its facility in Türkiye.  Id. at 15–

16.  Plaintiffs complain that Commerce, although addressing the record evidence

regarding these two companies, did not assess the accuracy and completeness of the

data more generally.  Pl. Cmts. at 13–19.  However, after finding that no evidence

undermined the Industry Source data, Commerce concluded:

> the record supports Commerce's conclusion that the shipment data from
> this source account for all domestic shipments of the domestic like
> product (including the appropriate green tube finishing operations) and
> that, after accounting for the domestic industry's export shipments
> derived from reasonably available information (including industry-wide
> data from the ITC's India et al. OCTG 2020 Review), the resulting
> denominator used in the industry support calculation appropriately
> reflects the entire universe of production of the domestic like product in
> calendar year 2020.

---

[12] Here, Commerce defines the domestic like product as OCTG, which includes green
tube.  Remand Results at 8–9.  Commerce defines the domestic industry as "producers
and workers who produce the domestic like product."  Remand Results at 7–8.  As
instructed, Commerce reexamined the record, determining that OCTG green tube
"finishing operations (i.e. heat treatment) should be a part of the domestic industry."
Remand Results at 9.  Commerce finds no evidence to suggest that OCTG processors
who provide heat treatment should not be included in the domestic industry
calculation.  Remand Results at 10.

Court No. 22-00343                                                                                   Page 18
**PUBLIC VERSION**

Remand Results at 12.

　　　　Plaintiffs further complain that because the data was not disaggregated it was

incomplete and therefore inaccurate.  Plaintiffs argue:

> Commerce did not demonstrate the data "accurately reflected industry
> support" because the record evidence does not support Commerce's
> conclusion that the denominator of the industry support calculation
> includes total U.S. production of the domestic like product, including
> imported green pipe that has been processed by a U.S. processor.
> Commerce failed to confirm the completeness of the shipment data from
> the industry source provided by Petitioners and relied upon by
> Commerce as the starting point of the industry support calculations.

Pl. Cmts. at 8.  However, in <u>Tenaris I</u> the Court did not order Commerce to confirm

the completeness or the accuracy of the shipment data.  Rather, it ordered Commerce

to "reconsider or further explain" its determination that the record accurately

reflected industry support, including whether finishing operations were counted

twice. <u>See</u> <u>Tenaris I</u>, 693 F.Supp.3d at 1328.  Thus, Commerce's industry support

determination is reasonable, supported by substantial evidence, and therefore

sustained.

## CONCLUSION

　　　　For the reasons discussed above, Commerce's industry support determination

is sustained.  Judgment will enter accordingly.

　　　　　　　　　　　　　　　　　　　　　 /s/ Claire R. Kelly
　　　　　　　　　　　　　　　　　　　　　Claire R. Kelly, Judge

Dated:　　　　December 2, 2024
　　　　　　　　New York, New York